JASMIN BURZIC, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Dedicated Transportation, Inc., *et al.*, Appellees).

First District (Illinois Workers' Compensation Commission Division)   No. 1—08—2303WC

Opinion filed April 28, 2009.—Rehearing denied June 1, 2009.

Law Office of Corti & Aleksy, of Chicago, for appellant.

Ganan & Shapiro, P.C., of Chicago, for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

The claimant, Jasmin Burzic, appeals from an order of the circuit court which confirmed a decision of the Illinois Workers' Compensation Commission (Commission) that denied his petition for a rule to show cause against Mark Mendenhall and Zenith Insurance Company (Zenith) for allegedly practicing a policy of unfairness in handling and processing his claim for benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)). For the reasons that follow, we affirm the decision of the circuit court in part and reverse in part.

The claimant filed an application for adjustment of claim pursuant to the Act, seeking benefits for injuries he alleged that he received on May 28, 2002, while in the employ of Dedicated Transportation, Inc. (Dedicated). Following a hearing held pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2002)) at which Dedicated stipulated that the claimant suffered an accidental injury arising out of and in the course of his employment, an arbitrator issued a decision in which he found that the claimant sustained a back strain and temporary aggravation of preexisting degenerative changes in his lumbar spine all of which resolved by August 14, 2002. The arbitrator also found that the claimant had exceeded the two-physician choice limitation set forth in section 8(a) of the Act (820 ILCS 305/8(a) (West 2002)). The arbitrator awarded the claimant 11 weeks of temporary total disability (TTD) benefits, covering the period from May 29, 2002, through August 13, 2002. However, he denied the claimant TTD benefits for the period after August 14, 2002, and the claimant's request for payment of medical expenses incurred after that date. The arbitrator also denied the claimant's request for penalties and attorney fees.

The claimant sought a review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission modified the arbitrator's decision, finding that the claimant's condition after August 14, 2002, remained causally related to his May 28, 2002, work accident and that he did not exceed the number of allowable physicians under section 8(a) of the Act. The Commission awarded the claimant 79 weeks of TTD benefits and $51,643.52 for necessary medical expenses. In all other respects, the Commission adopted the arbitrator's decision and remanded the matter to the arbitrator pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

Neither party appealed the Commission's decision. On or about October 21, 2005, the claimant began receiving vocational rehabilitation services and maintenance benefits. Mark Mendenhall, an assistant claims manager for Zenith, Dedicated's workers' compensation insurance carrier, testified that he authorized Vocamotive to continue offering vocational rehabilitation counseling to the claimant, and he also directed the payment of weekly maintenance benefits to the claimant. At Mendenhall's direction, Zenith ceased paying the claimant maintenance benefits as of February 26, 2006, and on March 15, 2006, Mendenhall caused the termination of the vocational rehabilitation services that the claimant had been receiving from Vocamotive.

On March 20, 2006, the claimant filed a petition for a hearing pursuant to section 8(a) of the Act seeking a continuation of his vocational rehabilitation services and maintenance benefits. The matter was assigned to an arbitrator for hearing.

On March 29, 2006, the claimant filed a petition for a rule to show cause why Zenith and Mendenhall should not be disciplined for practicing a policy of unfairness in the handling and processing of the claimant's claim. A hearing was held on the petition before Commissioner DeMunno on April 25, 2006.

At the hearing before Commissioner DeMunno, Mendenhall testified that, at all times relevant, he was responsible for the day-to-day handling of the claimant's file and that he was primarily responsible for the decisions which Zenith made with respect to that file. Mendenhall stated that the claimant's maintenance benefits were terminated on February 27, 2006, after he was notified by Vocamotive that the claimant had secured employment and was to begin work on February 28, 2006. According to Mendenhall, he received a message in mid-March of 2006, from Joseph Belmonte, the individual at Vocamotive who was assisting the claimant in his job search, informing him that the claimant was no longer employed. According to the message, the claimant was unable to do the work for which he was hired "due to language issues." Mendenhall admitted that, prior to February 2006, he was aware that the claimant had difficulty with the English language.

Mendenhall testified that, after reviewing the status reports which he received from Vocamotive, he concluded that the claimant had not been cooperating with the vocational rehabilitation services. He noted that the claimant declined to look for work outside of Franklin Park or the immediately surrounding communities and the fact that the claimant had missed several appointments for job interviews. According to Mendenhall, it was the claimant's lack of cooperation which prompted him to terminate vocational rehabilitation and decline to reinstate maintenance benefits. He admitted, however, that prior to February 2006, he never expressed any concern about the claimant's lack of cooperation with representatives of Vocamotive.

Joseph Belmonte, a certified rehabilitation counselor, also testified at the hearing before Commissioner DeMunno. Belmonte stated that he was assigned to assist the claimant in his job search. He testified that the claimant was cooperative and that the claimant never made any statements or took any action which was consistent with a lack of motivation to secure employment. However, on cross-examination, Belmonte admitted that the claimant had some attendance problems, that he resisted Vocamotive's dress policy, that the claimant failed to complete homework assignments on several occasions, and that he objected to seeking employment outside of the immediate area in which he lived. Nevertheless, Belmonte maintained that the claimant was generally cooperative.

Belmonte testified that the claimant interviewed for a job with Safety Services Security Systems (Safety) on February 21, 2006. According to Belmonte, a representative from Vocamotive accompanied the claimant and assisted him in filling out the job application, which he was unable to complete independently. The claimant was offered a job which was to begin on February 28, 2006. Belmonte testified that the claimant appeared enthusiastic about the job. However, when the claimant reported for work on February 28, 2006, it was determined that, due to his limited command of English, the claimant was unable to fill out the type of reports which the job required, and, as a consequence, Safety withdrew its offer of employment.

Belmonte testified that the claimant was a Bosnian refugee who had a limited command of English. He admitted that he did not request that the claimant receive tutoring in English as part of the vocational rehabilitation plan which he prepared. Belmonte was aware that the claimant had completed a course in English as a second language at Truman College and that the claimant had obtained commercial driving privileges for three types of vehicles by taking examinations given in English. According to Belmonte, he was able to work with the claimant without the need for English tutoring. Belmonte stated that he never requested that Zenith authorize English tutoring for the claimant prior to February of 2006. He also admitted that, prior to February 2006, Zenith never refused to authorize any services for the claimant which he requested.

It was Belmonte's testimony that Mendenhall called him on March 15, 2006, and stated that he wanted the claimant's file closed. Consequently, Belmonte provided no further vocational rehabilitation services.

Following the hearing on the claimant's petition for a rule to show cause, Commissioner DeMunno stated that the matter would be taken under advisement by the Commission.

Subsequently, the claimant and Dedicated entered into a settlement contract pursuant to which Dedicated agreed to pay the claimant $175,000 in full and complete settlement of all claims under the Act arising as a consequence of the claimant's work-related injury May 28, 2002. The settlement contract was approved by the Commission on October 26, 2006.

On June 22, 2007, the Commission issued a decision denying the claimant's petition for a rule to show cause against Zenith and Mendenhall. The Commission found that their denial of further vocational rehabilitation services and maintenance, "whether fair or unfair," did not rise to the level of a policy of unfairness subjecting Zenith or Mendenhall to discipline pursuant to section 7090.20 of the Rules Govern-

ing Practice Before the Illinois Workers' Compensation Commission (Commission's Rules) (50 Ill. Adm. Code §7090.20 (2006)).

The claimant sought judicial review of the Commission's decision in the circuit court of Cook County. The circuit court issued a written memorandum decision and judgment order on July 30, 2008, confirming the Commission's decision. Thereafter, the claimant filed the instant appeal.

As a preliminary matter, we address the question of whether the commission had jurisdiction to enter its decision of June 22, 2007, denying the claimant's petition for a rule to show cause against Mendenhall and Zenith. Dedicated, Mendenhall, and Zenith argue that, once the Commission approved the settlement contract entered into between the claimant and Dedicated, it lost jurisdiction to render any decision on the claimant's petition. The circuit court came to the same conclusion, finding that "the Commission lacked jurisdiction to render its June 22, 2007 Order denying the Rule to Show Cause."

Our analysis of the issue is made particularly difficult due to internal inconsistencies contained in the circuit court's order. In one paragraph, the court concluded that the Commission lacked jurisdiction to enter its order of June 22, 2007, and in the following paragraph the court confirmed that very decision. If the Commission lacked jurisdiction to enter its order, then the order should have been vacated, not confirmed. If, on the other hand, the Commission possessed the requisite jurisdiction to rule on the claimant's petition, notwithstanding the fact that his underlying claim had been settled, the appropriate course of action for the circuit court would have been to address the merits of the Commission's decision.

The claimant's petition for a rule to show cause against Zenith and Mendenhall was filed with the Commission prior to the settlement of the underlying claim, and, as a consequence, the Commission clearly had jurisdiction over the petition when filed. The settlement contract approved by the Commission on October 26, 2006, provides, in relevant part, that the claimant accepted $175,000 "in full and complete settlement of any and all claims, known or unknown, including all claims for specific loss, temporary total compensation, medical expenses as have been or to be incurred, compensation pursuant to Section 8(d)(2) of the Act or permanent partial or permanent total disability resulting from said alleged accident and any other accident, injury or aggravation of a pre-existing condition arising out of and in the course of the [claimant's] employment with [Dedicated] to and including 5/29/2002 involving alleged disability to any portion of the [claimant's] anatomy." Once approved, the settlement contract had the same legal effect as an award of the Commission (*Ahlers v. Sears,*

*Roebuck Co.*, 73 Ill. 2d 259, 265, 383 N.E.2d 207 (1978)), and, like any award of the Commission, it became final after 20 days when no petition for review was filed (820 ILCS 305/19(f)(1) (West 2006)). As a consequence, the Commission had no jurisdiction to reopen or reconsider the award to the claimant after November 15, 2006.

■ The petition for a rule to show cause pending against Mendenhall and Zenith was distinct from the settlement between the claimant and Dedicated. The petition did not request any award of benefits to the claimant; rather, it prayed the issuance of a rule to show cause why Mendenhall and Zenith should not be disciplined for practicing a policy of unfairness toward the claimant in the handling and processing of his claim. This was a collateral matter that was distinct from the settlement between the claimant and Dedicated. Section 4(c) of the Act provides that the Commission may order and direct that an insurer practicing "a policy of delay or unfairness toward employees in the adjustment, settlement, or payment of benefits due such employees" discontinue the writing of workers' compensation insurance in Illinois. 820 ILCS 305/4(c) (West 2006). We believe, therefore, that the Commission had jurisdiction pursuant to section 4(c) of the Act to resolve the issue on June 22, 2007, notwithstanding the fact that it had approved the settlement contract between the claimant and Dedicated more than 20 days earlier. See *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 556-60, 837 N.E.2d 909 (2005).

We now address the merits of the instant appeal. The claimant contends that the Commission erroneously interpreted section 4(c) of the Act (820 ILCS 305/4(c) (West 2006)) and section 7090.20 of the Commission's Rules (50 Ill. Adm. Code §7090.20 (2006)) as requiring proof of a company-wide policy of unfairness in the handling of a multitude of claims before an insurer or its agent is subject to discipline. The claimant appears to argue that the statute and the rule only require a finding of a single act of unfairness in the handling of a claim.

The interpretation of a statute is a question of law. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995). Consequently, on review of an administrative agency's decision, court's are not bound by the agency's interpretation of a statute. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97, 606 N.E.2d 1111 (1992). If the language of the statute is clear and unambiguous, the court must interpret the statute according to its terms without resorting to aids of construction. *Branson*, 168 Ill. 2d at 254. If, however, the statute is ambiguous, substantial weight will be given to the manner in which the agency charged with its enforcement has interpreted it. *Abrahamson*, 153 Ill. 2d at 97-98. The initial ques-

tion of whether a statute is ambiguous is also one of law and subject to a *de novo* determination on review. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 190, 726 N.E.2d 65 (2000).

As noted earlier, section 4(c) of the Act provides that the Commission may order and direct that an insurer practicing "a policy of delay or unfairness toward employees in the adjustment, settlement, or payment of benefits due such employees" discontinue the writing of workers' compensation insurance in Illinois. 820 ILCS 305/4(c) (West 2006). Section 7090.20 of the Commission's Rules provides that, whenever the Commission finds that an insurer or its agent "is practicing a policy of unfairness toward the claimant in handling and processing of claims" under the Act, the Commission may issue a rule to show cause why such carrier or agent should not be suspended from writing or processing workers' compensation claims within Illinois. 50 Ill. Adm. Code §7090.20 (2006). Neither the statute nor the rule defines a policy of unfairness and, to that extent, we believe that both are ambiguous.

In this case, the Commission observed that sections 16, 19(k) and 19(l) (820 ILCS 305/16, 19(k), 19(*l*) (West 2006)) of the Act punish the conduct of an employer "towards a single claimant in an individual claim." It went on to hold that requiring a showing of a "policy of unfairness" in the "handling and processing of claims" to support disciplinary action under section 7090.20 of the Commission's Rules reflects a purpose of "punishing an insurer's or agent's actions in terms of their policy of processing claims, not necessarily their actions towards an individual claimant." We agree.

In addition to the substantial weight we give to the manner in which the Commission interprets statutes and rules it is charged to enforce (see *Abrahamson*, 153 Ill. 2d at 97-98), we note that section 7090.20 of the Commission's Rules was promulgated by the Commission itself pursuant to a statutory grant of authority (see 820 ILCS 305/16 (West 2006)).

Deference aside, we construe both section 4(c) of the Act and section 7090.20 of the Commission's Rules in the same manner as the Commission construed section 7090.20. In construing a statute, we evaluate the statute as a whole, construing each provision in connection with every other section. *Miller v. Department of Registration & Education*, 75 Ill. 2d 76, 81, 387 N.E.2d 300 (1979). When the legislature provided for penalties for the unreasonable or vexatious delay in the payment or underpayment of compensation due under the Act, it did not require proof of any "policy." See 820 ILCS 305/19(k) (West 2006)). In contrast, section 4(c) of the Act requires more than a

mere finding of delay or unfairness in the settlement or payment of benefits to support disciplinary action against an insurer or its agent; the statute requires a finding that the insurer or its agent practiced a *"policy* of delay or unfairness." (Emphasis added.) 820 ILCS 305/4(c) (West 2006). Had the legislature intended to provide for disciplinary action against an insurer or its agent for an isolated act of delay or unfairness in the settlement or payment of benefits due under the Act, there would have been *no* need to refer *to* a "policy" in section 4(c). Statutes should be construed so that no term is rendered superfluous. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990).

Statutory terms not specifically defined must be given their ordinarily and popularly understood meanings, in light of the statute's purpose. *Niven v. Siqueira*, 109 Ill. 2d 357, 366, 487 N.E.2d 937 (1985). A policy can be defined as a course or method of action selected from alternatives and in light of given conditions used to determine present and future decisions. See Webster's Third New International Dictionary 1754 (1981). Although a single course of action may be in furtherance of an adopted policy, a single course of action in an individual case does not a policy make.

■ We believe that, in order to justify disciplinary action under either section 4(c) of the Act or section 7090.20 of the Commission's Rules, the offending activity must be in furtherance of an adopted method of action used to determine present and future decisions or behavior. An isolated delay or unfair action in the settlement or payment of benefits will not satisfy either the statute or the rule unless it is in furtherance of an adopted policy. Our conclusion in this regard leads us to find that the Commission properly construed its own rule.

■ Next, the claimant argues that the Commission's denial of his petition for a rule to show cause was against the manifest weight of the evidence. We disagree.

Whether an employer's conduct justifies the imposition of section 19(k) penalties for the unreasonable or vexatious delay in the payment of benefits due under the Act is a factual question to be resolved by the Commission. *McKay Plating Co. v. Industrial Comm'n*, 91 Ill. 2d 198, 209, 437 N.E.2d 617 (1982). It follows then that the question of whether an insurer or its agent has practiced a policy of delay or unfairness justifying the imposition of discipline under section 4(c) of the Act or section 7090.20 of the Commission's Rules is also a question of fact.

The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d

1005 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

In this case, there is no evidence in the record which would support the conclusion that, in denying the claimant future maintenance benefits or vocational rehabilitation services, Mendenhall was following any policy. We find, therefore, that the Commission's decision is not against the manifest weight of the evidence.

For the reasons stated, we reverse that portion of the circuit court's order which found that the Commission lacked jurisdiction to render its decision of June 22, 2007, and affirm that portion of the circuit court's order which confirmed the Commission's decision in this matter.

Affirmed in part and reversed in part.

McCULLOUGH, P.J., and HUDSON, HOLDRIDGE, and DONOVAN, JJ., concur.