# Illinois Official Reports

## Appellate Court

---

*Loyola University of Chicago v. Illinois Workers' Compensation Comm'n*,
**2015 IL App (1st) 130984WC**

---

| | |
|---|---|
| Appellate Court Caption | LOYOLA UNIVERSITY OF CHICAGO, Appellee, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Anne Mikesh, Appellant). |
| District & No. | First District, Workers' Compensation Commission Division<br>Docket No. 1-13-0984WC |
| Filed | May 1, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-51120; the Hon. Eileen O'Neil Burke, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; Commission decision reinstated as modified. |
| Counsel on Appeal | Mark A. DePaolo and Megan C. Kivisto, both of Corti, Aleksy & Castaneda, of Chicago, for appellant.<br><br>Mark A. Braun, of Braun Lorenz & Bergin, P.C., of Chicago, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justices Hoffman, Harris, and Stewart concurred in the judgment and opinion. |

**OPINION**

¶ 1 Claimant, Anne Mikesh, appeals from the judgment of the circuit court of Cook County finding that the Illinois Workers' Compensation Commission (Commission) did not have jurisdiction to construe the settlement contract entered into by her and respondent, Loyola University of Chicago. For the reasons set forth below, we affirm the judgment of the circuit court in part, reverse in part, and reinstate the decision of the Commission as modified.

¶ 2                                    I. BACKGROUND

¶ 3 The facts underlying this appeal are not in dispute. Claimant worked for respondent as a secretary in the cardiology department of Loyola University Medical Center. Claimant filed two applications for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)) alleging injuries to her back and left lower extremity while moving patient records on December 1, 2003, and February 16, 2005. During the pendency of the case, respondent did not pay any temporary total disability benefits and claimant applied for both long-term disability benefits and social security disability benefits. In conjunction with her application for long-term disability benefits, claimant signed a "Reimbursement Agreement." The Reimbursement Agreement provided that under the terms of the policy governing long-term disability, claimant's benefits may be reduced by any other benefits that she receives, such as social security disability. The Reimbursement Agreement further provided:

"If I later receive Other Benefits for myself or my dependents, if applicable, I agree to reimburse the full amount of any overpayment within 30 days after receiving the award. In addition, I understand that the Insurance Company, at is [*sic*] option, will retain any future benefits payable, including Minimum Monthly Benefits, and use it to reduce the overpayment not refunded within 30 days. The Insurance Company reserves the right to obtain lump payment to recover an overpayment even if future benefits are being withheld."

In a letter dated September 16, 2005, CIGNA Group Insurance (CIGNA) notified claimant that her request for long-term disability benefits had been approved. The letter also reiterated that the award would be reduced by any other benefits claimant receives.

¶ 4 Meanwhile, claimant's workers' compensation case proceeded to arbitration. On February 21, 2006, the arbitrator determined that claimant's condition of ill-being was causally related to the February 16, 2005, work injury. The arbitrator awarded claimant temporary total disability benefits (see 820 ILCS 305/8(b) (West 2002)) and reasonable and necessary medical expenses (see 820 ILCS 305/8(a) (West 2002)). Both parties sought review before the Commission. On December 24, 2007, the Commission affirmed and adopted the decision of the arbitrator and remanded the matter for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980). Thereafter, respondent sought judicial review in the circuit court of Cook County.

¶ 5 In August 2008, while claimant's case was pending in the circuit court, claimant was notified that she had been approved for social security disability benefits. During this time, the parties also engaged in settlement negotiations. On January 20, 2009, the Commission approved the parties' settlement contract lump-sum petition and order (settlement contract).

The terms of the settlement contract are set forth in an exhibit attached thereto. Those terms provide in relevant part:

"Respondent offers and [claimant] accepts $318,651.44 in a lump sum and other good and valuable consideration herein recited in a full, final, and complete settlement of all claims of any nature or kind, whatsoever, known or unknown, resulting or to result from the described accidental injuries of December 1, 2003 and February 16, 2005, and any other accident, incident, aggravation, or exposure during the period of [claimant's] employment by the Respondent, to and including the date of this contract.

The additional consideration for the settlement and the total and complete release of the employer from any and all possible liability is the Respondent's obligation to hold [claimant] harmless from any claim for reimbursement by any entity, which provided long term or short term disability payments, made as a result of the previously described accidental injuries at anytime from the date of the claimed accidents to the date of the approval of this contract.

* * *

[Claimant] waives any and all rights under the *** Act, including, but not limited to Sections 8(a) and 19(h), except as to enforcement of the terms of this [settlement contract]."

Neither party sought review of the Commission's approval of the settlement contract.

¶ 6 In a letter dated February 3, 2009, CIGNA wrote claimant regarding an overpayment of long-term disability benefits which occurred as a result of her social security disability award. The letter provided in pertinent part as follows:

"We received notification that you were awarded Social Security Disability benefits in the monthly amount of $901.00 effective as of September 1, 2005. Per your policy, Social Security Disability benefits are considered 'Other Income' and must reduce your Long Term Disability benefits. Therefore, effective in your February check, your Long Term Disability benefits will be reduced to $618.00. Additionally, because we paid benefits to you from September 1, 2005 through September 11, 2008 with no reduction for the Social Security Disability benefits, your claim is overpaid in the amount of $32,766.36.

* * *

In addition, the Long Term Disability benefits that are due for the time frame September 12, 2008 through January 11, 2009 have been applied towards the current overpayment balance. This reduces your overpayment to $29,676.36."

After receiving CIGNA's letter, claimant's attorney contacted respondent and demanded that it tender a check in the amount of the overpayment. Respondent refused to provide reimbursement.

¶ 7 On September 22, 2009, claimant filed a petition for penalties pursuant to sections 19(k) and 19(l) of the Act (820 ILCS 305/19(k), (l) (West 2008)) and attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2008)). The petition, to which claimant later filed an "addendum," alleged that respondent's refusal to reimburse CIGNA on her behalf constituted a breach of the settlement contract. Claimant asked the Commission to order respondent to tender the reimbursement amount and to assess penalties and fees against respondent. Respondent filed an answer denying that it failed to comply with the terms of the

- 3 -

settlement contract. According to respondent, it had fully performed its obligations under the settlement contract. Respondent further asserted that the Commission lacked jurisdiction to consider claimant's petition and that the circuit court, pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2008)), was the appropriate venue to address an allegation of failure to comply with the provisions of a settlement contract.

¶ 8        Claimant's petition was heard before Commissioner Lamborn on March 18, 2010. The Commission issued a written order on July 26, 2012. At the outset, the Commission briefly addressed the jurisdictional issue, stating:

> "Asked of the Appellate Court in *Flynn v. Industrial Commission*, was, '[I]s the Commission authorized to award section 19(k) penalties following approval of a lump-sum settlement contract?' *Flynn v. Industrial Commission*, 94 Ill. App. 3d 844, 845 *** [(1981)]. The court succinctly stated, '[W]e hold that under section 19(k) the settlement contract has the same legal effect as an award.' *Flynn*, 94 Ill. App. 3d at 849. Accordingly, the Commission finds it has jurisdiction to entertain [claimant's] petition."

The Commission then addressed whether respondent was liable for the reimbursement of payments made to claimant by CIGNA. The Commission initially noted that respondent drafted the settlement contract. Emphasizing that respondent expressly agreed to hold petitioner harmless "from *any and all* possible claims for reimbursement by any entity, which provided long term or short term disability benefits" (emphasis added), the Commission determined that respondent, in the settlement contract, "failed to limit its liability as it seeks to do so now." Accordingly, the Commission ordered that respondent be held liable in the amount of $32,766.36, representing the overpayment of benefits received by claimant. In addition, the Commission denied claimant's petition for penalties and attorney fees, citing two reasons. First, the Commission found that it lacked jurisdiction to consider penalties and attorney fees because the settlement contract contained language explicitly waiving claimant's right to them. Second, the Commission determined that claimant failed to prove that respondent's interpretation of the settlement contract was unreasonable or vexatious as "there was a reasonable and arguable difference of opinion *** concerning which party was liable for reimbursement to CIGNA."

¶ 9        Commissioner Tyrrell authored a separate concurring opinion. He agreed with all parts of the Commission's decision except for the finding that it lacked jurisdiction to consider claimant's petition for penalties and attorney fees. Citing *Flynn v. Industrial Comm'n*, 94 Ill. App. 3d 844, 849-50 (1981), Commissioner Tyrell reasoned that allowing the parties to divest the Commission of authority to assess penalties and attorney fees would permit a party to enter into a settlement which it could vexatiously refuse to pay without fear of penalties.

¶ 10        Thereafter, respondent sought judicial review of the Commission's decision in the circuit court of Cook County. On February 14, 2013, the circuit court held a hearing on the matter.[1] On February 19, 2013, the circuit court entered the following order:

> "This case coming to be heard on Petition of [respondent] and the court being advised, having read all briefs and heard Oral Argument finds that the *** Worker [*sic*] Compensation Commission did not have jurisdiction to construe the Settlement Contract and Lump Sum Order which had become final. The Order of the Commission

---

[1]No transcript pertaining to this hearing has been provided on appeal.

- 4 -

that Respondent *** make additional payments to [claimant] and others is *** hereby reversed and set aside. All other findings are affirmed."

On March 18, 2013, claimant filed a notice of appeal in this court.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, claimant contends that the Commission retained jurisdiction to interpret the terms of the settlement contract. In support of this position, claimant cites exclusively to *Flynn v. Industrial Comm'n*, 94 Ill. App. 3d 844 (1981). Claimant further contends that the Commission properly interpreted the hold-harmless provision of the settlement contract as imposing liability on respondent to reimburse CIGNA for the overpayment of long-term disability benefits. Respondent counters that the Commission exceeded its statutory jurisdiction because it interpreted a decision that was already final. According to respondent, the proper venue for claimant to seek relief was in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2008)). Respondent further contends that, assuming, *arguendo*, jurisdiction lies with the Commission, the administrative body "ignored all applicable principles of contract interpretation" in reviewing the settlement contract.

¶ 13    We begin our analysis by addressing the jurisdictional issue, which presents a question of law subject to *de novo* review. See *Smalley Steel Ring Co. v. Illinois Workers' Compensation Comm'n*, 386 Ill. App. 3d 993, 995 (2008). The Commission is an administrative body created by legislative enactment for the purpose of administering the Act. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005); *Michelson v. Industrial Comm'n*, 375 Ill. 462, 466 (1941). As such, it lacks the inherent powers of a court and can only make such orders as are within the powers granted to it by the legislature. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 16; *Michelson*, 375 Ill. at 466-67. Consequently, when the Commission acts outside of its specific statutory authority, it acts without jurisdiction. *Alvarado*, 216 Ill. 2d at 553-54.[2]

¶ 14    Section 19(f) of the Act (820 ILCS 305/19(f) (West 2008)) states that "[t]he decision of the Commission acting within its powers *** shall, in the absence of fraud, be conclusive unless reviewed as in this paragraph hereinafter provided." The Act further provides that review of a decision of the Commission shall be had in the circuit court and shall be commenced "within 20 days of the receipt of the decision of the Commission." 820 ILCS 305/19(f)(1) (West 2008). It is axiomatic that a settlement contract approved by the Commission has the same legal effect as an award entered by the Commission. *Alvarado*, 216 Ill. 2d at 555; *Ahlers v. Sears, Roebuck Co.*, 73 Ill. 2d 259, 265 (1978); *Burzic v. Illinois Workers' Compensation Comm'n*, 391 Ill. App. 3d 202, 207-08 (2009). Thus, the Commission's approval of a settlement contract becomes a final award after 20 days if no petition for review is filed in the circuit court. *Alvarado*, 216 Ill. 2d at 558; *Burzic*, 391 Ill. App. 3d at 208. In this case, the Commission approved the settlement contract on January 20, 2009, and neither party sought judicial review. Thus, the settlement contract at issue constitutes a final award under the Act.

_____

[2]In *Alvarado*, the supreme court noted that although the term "jurisdiction" is not strictly applicable to an administrative body, the term may be used to designate the authority of an administrative body to act. *Alvarado*, 216 Ill. 2d at 553-54 (citing *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989)).

¶ 15    The Act allows the Commission to reopen or modify an existing award only in limited circumstances. For instance, section 19(f) of the Act provides that the Commission or a party may move to "correct any clerical error or errors in computation within 15 days after the date of receipt of any award by [the] Arbitrator or any decision on review of the Commission." 820 ILCS 305/19(f) (West 2008); *Alvarado*, 216 Ill. 2d at 555. Section 19(h) of the Act allows the Commission to review an agreement or award "on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended." 820 ILCS 305/19(h) (West 2008); *Curtis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (1st) 120976WC, ¶ 10. Of course, claimant did not request the correction of any clerical error or an error in computation and she did not seek review of the settlement contract on the basis that there was a material change in her disability. Instead, claimant captioned her petition as one for penalties pursuant to sections 19(k) and 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2008)) and for attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2008)).

¶ 16    Claimant asserts that the Commission had jurisdiction to entertain her petition and determine whether the express terms of the approved settlement contract had been satisfied. As noted above, claimant, in support of her position, relies on *Flynn*, 94 Ill. App. 3d 844. Respondent counters that the Commission exceeded its statutory jurisdiction by interpreting a prior final decision and that the proper venue for claimant to seek relief is in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2008)).

¶ 17    In *Flynn*, the claimant sought benefits for multiple injuries sustained while in the respondent's employ. The claims were settled by lump-sum settlement contracts which the Commission approved. After the respondent refused to tender payment, the claimant filed with the Commission a petition pursuant to section 19(k) of the Act, which allows the Commission to award penalties "[i]n case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation." The Commission assessed penalties against the respondent for nonpayment of the award. Despite the Commission's ruling, the respondent persisted in its refusal to make payment. As a result, the claimant instituted actions in the circuit court pursuant to section 19(g) of the Act. The respondent moved to dismiss the actions, claiming that neither the Commission nor the circuit court had jurisdiction to award or enforce the penalty provisions of the Act following the Commission's approval of a lump-sum settlement contract. The circuit court agreed, and both cases were dismissed.

¶ 18    On appeal, the *Flynn* court reversed. *Flynn*, 94 Ill. App. 3d at 848-50. The court determined that, pursuant to section 19(k) of the Act, the Commission is authorized to assess penalties following approval of a settlement contract because a settlement contract has the same legal effect as an award. *Flynn*, 94 Ill. App. 3d at 849. The court explained:

> "Were we to hold otherwise, we would be permitting defendants to enter into settlement contracts which they could vexatiously refuse to pay without fear of penalties. Should they determine that the award could be invested at a higher rate of interest than the six percent per annum provided under section 19(n), they would actually be profiting from the refusal to pay. Clearly this is contrary to the intent of the Act." *Flynn*, 94 Ill. App. 3d at 849-50.

Thus, *Flynn* stands for the proposition that the Commission is authorized to assess penalties and attorney fees under the Act against a party who fails to comply with the terms of a settlement contract approved by the Commission. *Flynn*, 94 Ill. App. 3d at 848-50.

¶ 19 In the present case, claimant sought the imposition of penalties and attorney fees for nonpayment of a settlement contract approved by the Commission. Clearly, pursuant to *Flynn*, the Commission was authorized to address claimant's petition. *Flynn*, 94 Ill. App. 3d at 848-50. Moreover, we fail to see how the Commission could determine if respondent's refusal to reimburse claimant for the overpayment of long-term disability benefits warranted the imposition of penalties and attorney fees without first interpreting the terms of the settlement contract. Stated differently, to assess whether claimant was entitled to penalties and attorney fees, the Commission had to necessarily determine whether there had been a breach of the settlement contract. Accordingly, we disagree with the trial court and find that, in conjunction with deciding claimant's petition for penalties and attorney fees, the Commission had jurisdiction to interpret the settlement contract.

¶ 20 Respondent argues that *Flynn* is inapplicable because there was no issue of contract interpretation in that case. We do not disagree that the *Flynn* court did not interpret the terms of the settlement contract at issue there. However, respondent acknowledges that in *Flynn*, the amount of the settlement contract "was fixed but not paid." In other words, the parties in *Flynn* did not dispute that the amount due the claimant pursuant to the settlement contract was paid in full. Under such circumstances, there was no reason for the Commission to interpret the settlement contract.

¶ 21 Respondent also asserts that the Act does not confer jurisdiction on the Commission to reopen and set aside a settlement contract. In support of its position, respondent directs us to the following language from *Michelson*:

"The clear intent of [section 19(h)] is that once a lump sum settlement is approved by the commission, it is not subject to review for recurrence, increase or for diminishing or ending of the disability. It is equally clear, that the language [of section 19(h)] does not show legislative intent that jurisdiction, after the entry of such approval, should remain in the commission, and unless it is provided by other parts of the act, it does not exist." *Michelson*, 375 Ill. at 465-66.

We find respondent's reliance on *Michelson* misplaced. Initially, we reiterate that, in the present case, claimant did not seek review of the settlement contract on the basis that there was a material change in her disability. Thus, section 19(h) is irrelevant to our analysis. Additionally, we do not interpret claimant's petition for penalties and fees as a request to have the Commission reopen and set aside the previously approved settlement contract. Rather, she seeks penalties and fees for non-payment of the full settlement contract. Indeed, respondent concedes that, pursuant to *Flynn*, the Commission has jurisdiction to address whether its conduct warranted the imposition of penalties. As noted above, to assess whether claimant was entitled to penalties and attorney fees, the Commission had to first interpret the settlement contract and determine whether there had been a breach of the agreement. In this context, the Commission need not reopen, modify, or expand the scope of the settlement contract. Rather, it must simply interpret the settlement contract as originally drawn to ascertain the parties' intent.

¶ 22 In fact, the Commission concluded that, under the terms of the settlement contract, respondent was liable for reimbursing CIGNA for the overpayment of long-term disability benefits made to claimant. Claimant asserts that the Commission properly interpreted the settlement contract. Respondent counters that, in interpreting the settlement contract, the Commission "ignored all principles of [contract] construction."

- 7 -

¶ 23    Contract interpretation is a question of law subject to *de novo* review. *Cincinnati Insurance Co. v. Gateway Construction Co.*, 372 Ill. App. 3d 148, 151 (2007). The principal goal in construing a contract is to ascertain and give effect to the intent of the parties at the time they executed the document. *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 310 (2002). In determining the parties' intent, the contract must be construed as a whole, viewing each provision in the light of the other provisions. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Where the language of a contract is plain, it provides the best evidence of the parties' intent and will be enforced as written. *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 727 (2006). Nevertheless, we are mindful that a court may properly disregard even unambiguous language when it is clear that the parties meant something different than what was said. *United Airlines, Inc. v. City of Chicago*, 116 Ill. 2d 311, 318-19 (1987).

¶ 24    In the present case, the terms of the settlement contract approved by the Commission are not ambiguous. The parties agreed to "a full, final, and complete settlement" in exchange for a lump-sum payment to claimant and "other good and valuable consideration herein recited." The additional consideration for the settlement consisted of "[r]espondent's obligation to hold [claimant] harmless from *any claim for reimbursement by any entity*, which provided long term or short term disability payments, made as a result of [claimant's] accidental injuries at anytime from the date of the claimed accidents to the date of the approval of this contract." (Emphasis added.) Considering the plain language of the contract, it is apparent that the parties intended that respondent protect claimant against "*any* claim for reimbursement by *any* entity" which provided long- or short-term disability payments made as a result of claimant's work injuries. (Emphasis added.) The reimbursement at issue clearly falls within this category. Claimant sustained a work-related injury. Respondent did not pay "TTD" benefits, so claimant applied for long-term disability benefits through CIGNA. CIGNA approved claimant's application and began paying long-term disability benefits. Following the Commission's approval of the settlement contract, CIGNA sought reimbursement for the overpayment of the long-term disability benefits as a result of the payment of social security disability benefits. Thus, CIGNA's request for reimbursement constituted a claim for reimbursement by an entity which provided long-term disability payments made as a result of claimant's work injuries. We do not find, and respondent does not direct us to, any language in the settlement contract to establish that the parties meant something different than what is said in the provisions cited above. Therefore, we find that the Commission correctly concluded that respondent is liable for the reimbursement of the overpayment of long-term disability payments made to claimant by CIGNA.

¶ 25    Curiously, the Commission denied claimant's request for penalties and attorney fees. The Commission cited two grounds for this decision. First, the Commission found that it lacked jurisdiction to consider penalties and attorney fees because the settlement contract contained language explicitly waiving claimant's right to them. Second, the Commission determined that claimant failed to prove that respondent's interpretation of the settlement contract was unreasonable or vexatious. Claimant does not challenge these findings on appeal. Nevertheless, we are compelled to address the Commission's finding that it lacked jurisdiction to consider the claimant's petition for penalties and attorney fees. We are unaware of any authority permitting the parties to draft a settlement agreement divesting the Commission of its ability to assess penalties. Indeed, such a provision contravenes the purpose of the Act, which is to provide financial protection for injured workers through prompt and equitable

compensation (*Chicago Bridge & Iron, Inc. v. Industrial Comm'n*, 248 Ill. App. 3d 687, 694 (1993)) and would, in the words of the *Flynn* decision, "permit[] defendants to enter into settlement contracts which they could vexatiously refuse to pay without fear of penalties" (*Flynn*, 94 Ill. App. 3d at 850). Accordingly, we find that the Commission erred in finding that it lacked jurisdiction to consider the issue of penalties and attorney fees.

¶ 26                                    III. CONCLUSION

¶ 27       For the reasons set forth above, we reverse those portions of the judgment of the circuit court of Cook County (1) holding that the Commission did not have jurisdiction to construe the settlement contract, (2) setting aside the Commission's order that respondent is liable in the amount of $32,766.36 for reimbursement of the long-term disability payments made by CIGNA to claimant, and (3) confirming that portion of the Commission's decision that it lacked jurisdiction to consider claimant's petition for penalties and attorney fees. We affirm that portion of the circuit court judgment confirming the Commission's finding that claimant failed to prove that respondent's interpretation of the settlement contract was unreasonable or vexatious. In addition, the decision of the Commission is reinstated as modified.

¶ 28       Affirmed in part and reversed in part; Commission decision reinstated as modified.