# Illinois Official Reports

## Appellate Court

---

**Paluch v. United Parcel Service, Inc., 2014 IL App (1st) 130621**

---

| | |
|---|---|
| Appellate Court Caption | JAMES PALUCH, Plaintiff-Appellee, v. UNITED PARCEL SERVICE, INC., Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0621 |
| Filed | March 26, 2014 |
| Rehearing denied | April 28, 2014 |
| Modified upon<br>denial of rehearing | April 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Due to an ambiguity in a workers' compensation settlement agreement as to whether plaintiff's employer was required to pay $400,000 to plaintiff or $400,000 plus a Medicare set-aside annuity, the trial court's judgment that the employer had to pay the $400,000 plus the annuity was reversed and the cause was remanded for an evidentiary hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-50237; the Hon. Daniel Gillespie, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Lauren K. Meachum and Cathleen M. Hobson, both of Law Offices of Meachum, Starck & Boyle, of Chicago, for appellant.

Ivan M. Rittenberg and Steven R. Saks, both of Rittenberg, Buffen, Gulbrandsen, Robinson & Saks, Ltd., of Chicago, for appellee.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

## OPINION

¶ 1 Sloppy, imprecise drafting can lead to legal wrangling. A single word in reciting the terms of a settlement, for example, can bring about intense litigation over interpretation. In drafting settlement agreements, lawyers should, quoting novelist Vladimir Nabokov's advice to writers, "have the precision of a poet," leaving out the poet's creativity, originality or artistic flourishes. Had the lawyers here been more studious and careful in choosing a single word ("plus"), this case undoubtedly would not have been necessary.

¶ 2 Under the terms of a workers' compensation settlement agreement between defendant United Parcel Service, Inc. (UPS), and its employee, James Paluch, UPS was required to pay Paluch an amount that UPS sets at $400,000 and Paluch sets at $400,000 plus a Medicare set-aside (MSA) annuity. After UPS refused to read the agreement in the manner that Paluch contended it should be read, he filed this action, arguing that UPS had not fully satisfied the agreement. The trial court agreed with Paluch. UPS now appeals, arguing that $400,000 included the MSA.

¶ 3 We find the agreement ambiguous as to the total amount UPS owed to Paluch and reverse the trial court and remand for an evidentiary hearing because the settlement agreement is ambiguous and open to more than one interpretation. After this court issued its opinion on March 26, 2014, Paluch filed a petition for rehearing, which was denied and this modified opinion was issued.

¶ 4                                    BACKGROUND

¶ 5 Plaintiff James Paluch settled his worker's compensation claim against defendant UPS. The agreement documenting the settlement received approval as an Illinois Workers' Compensation Commission (the Commission) settlement contract lump sum petition and order. The agreement states:

> "Respondent agrees to pay and Petitioner agrees to accept $400,000.00 in a lump sum plus payment of a Medicare Set-Aside (MSA), in annuity form, in full and final settlement of all claims for benefits past, present and future based on injuries arising

out of an accident on or about July 11, 2006. This settlement represents as a compromise of wage-differential benefits in the amount of $218,419.04 under Section 8(d)(1) of the Workers' Compensation Act, plus funding of an MSA in the amount of $148,790.00, direct reimbursement of BCBS lien in the amount of $31,135.82 and direct reimbursement of AETNA lien in the amount of $1,655.14. Respondent will pay all necessary and related medical expenses pursuant to the fee schedule or negotiated rate, whichever is less, that have been submitted to Respondent prior to contract approval and that contain all the required data elements necessary to adjudicate the bills pursuant to Section 8.2(d). Petitioner is responsible for payment of any and all medical expenses not submitted prior to contract approval. Petitioner hereby foregoes any right to review or reopen the settlement and agrees that all rights under Section 8(a) and 19(h) are expressly waived unless otherwise retained under the terms of this contract. The parties have taken Medicare's interests into consideration and included with this settlement is a proposed MSA with initial funding of $106,650.00 and an annuity providing $3,329.87 per year continuing for life for a total proposed MSA of $148,790.00. The MSA shall be submitted to CMS for approval. Should CMS determine the MSA to be insufficient, the Respondent reserves the right to appeal the decision, and Respondent agrees to either modify the MSA consistent with CMS recommendations or elect to allow Petitioner to retain his medical rights under Section 8(a). If the MSA is approved, then petitioner's rights under section 8(a) will cease upon funding of the MSA and the matter will be finalized with no futher [*sic*] activity necessary at the Commission."

The next paragraph states:

| "Total Amount of Settlement | $400,000.00 |
| Deduction: Attorney's Fees | $43,600.00 reduced from $80,000.00 |
| Deduction: Medical reports, X-rays | $2,611.84 |
| Deduction: Other (explain) | $[blank] |
| Amount employee will receive | $353,788.16" |

¶ 6 A social security rider to the settlement divided the award by Paluch's life expectancy, stating "$353,788.16 divided by Petitioner's life expectancy expressed in weeks is $282.31 per week."

¶ 7 UPS paid $218,419.04 in wage-differential benefits, $31,135.82 reimbursing a Blue Cross Blue Shield lien, and $1,655.14 reimbursing an Aetna lien. UPS also submitted $148,790 for the MSA in annuity form to the Centers for Medicare and Medicaid Services (CMS). (The parties agree that the MSA is not due until the amount is approved by CMS.) Paluch filed a petition for judgment on award, alleging that UPS owed Paluch another $181,580.96 under the settlement. UPS moved to dismiss, claiming full satisfaction because the specific list of items to be paid by UPS, including the MSA, equaled exactly $400,000, and the settlement did not identify any other specific payments. Paluch countered that the $400,000 was exclusive of the MSA, citing the language obligating UPS to pay "$400,000.00 in a lump sum *plus* payment of a Medicare Set-Aside" (emphasis added).

¶ 8 The trial court initially granted UPS's motion, finding that the parties intended the settlement to total $400,000, inclusive of the MSA. But the trial court reversed itself following Paluch's motion to reconsider and entered judgment for Paluch.

¶ 9        The trial court determined that the social security rider constituted conclusive evidence of the parties' intent to exclude the MSA from the $400,000 award. The trial court reasoned that had the parties intended the MSA to be part of the award, they would have listed and deducted the MSA in calculating the rider. UPS appeals, arguing the settlement agreement unambiguously includes the MSA in the $400,000 award and, alternatively, if the agreement is ambiguous, the trial court should have held an evidentiary hearing rather than entering judgment in Paluch's favor.

¶ 10                                                    ANALYSIS

¶ 11        As a preliminary matter, Paluch argues that judgment in his favor was mandated under section 19(g) of the Illinois Workers' Compensation Act (820 ILCS 305/19(g) (West 2010)), which limits enforcement of Commission orders. Section 19(g) provides that "either party may present *** a certified copy of the decision of the Commission when the same has become final, *** whereupon the court shall enter a judgment in accordance therewith." 820 ILCS 305/19(g) (West 2010). Accordingly, judgment on the award must be entered without the court questioning the Commission's decision, even if the court disagrees with the Commission's construction of the law. *Ahlers v. Sears, Roebuck Co.*, 73 Ill. 2d 259, 268 (1978). Paluch argues that the court should enforce the judgment without determining the amount of the judgment or deciding whether it had been satisfied. Further, Paluch contends that section 19(f) of the Illinois Workers' Compensation Act (820 ILCS 305/19(f) (West 2010)), which does not permit a review of a Commission order after "20 days of the receipt of notice of the decision of the Commission," prohibits this court from reviewing the agreement itself. UPS responds that it does not challenge the validity of the agreement approved by the Commission, so section 19(f) is irrelevant. Rather, UPS contends it made full payment, which is a viable defense to a section 19(g) petition. *Dallas v. Ameren CIPS*, 402 Ill. App. 3d 307, 312 (2010); *Aurora East School District v. Dover*, 363 Ill. App. 3d 1048, 1055 (2006).

¶ 12        We agree with UPS that payment can be raised as a defense to a section 19(g) petition. Whether an employer has refused to pay an arbitration award is a question of fact. Factual determinations made by the circuit court will not be overturned unless against the manifest weight of the evidence. *Radosevich v. Industrial Comm'n*, 367 Ill. App. 3d 769, 774 (2006). In determining whether there has been a refusal to pay, the circuit court may consider, among other things, (1) whether a demand was made for payment, (2) the length of time that transpired between the date the Commission's decision became final and the filing of the section 19(g) application, (3) the negotiations and communications between the parties that took place during this period, (4) whether the Commission's decision leaves room for good-faith disagreement as to the amount of the payments owed, and (5) whether and when a good-faith offer of settlement was presented. *McGee v. Ractian Construction Co.*, 231 Ill. App. 3d 929, 935 (1992). To determine if the Commission's decision leaves room for disagreement over the amount owed and whether that amount has been paid by UPS, we turn, as did the circuit court, to the settlement agreement.

¶ 13        A settlement agreement is a release governed by contract law. *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1006 (2011). When interpreting a contract, the court attempts to give effect to the parties' intentions, which are best indicated by the plain meaning of the words of the contract. *Gallagher v. Lenart*, 226 Ill. 2d 208 (2007). If the words in the contract are clear and unambiguous, we must give them their plain, ordinary and popular

meaning. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). But if the language of the contract is ambiguous, we may look to extrinsic evidence to determine the parties' intent. *Id*. Language in a contract is ambiguous if it is "susceptible to more than one meaning." *Id*. The mere fact that the parties disagree over the contract's interpretation does not establish ambiguity. *Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 319-20 (2008). Rather, instead of focusing on one clause or provision in isolation we must read the entire contract in context and construe it as a whole, viewing each provision in light of the other ones. *Gallagher*, 226 Ill. 2d at 233. We review a contract's interpretation *de novo*. *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 20 (2011); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007).

¶ 14    UPS contends that in the context of a workers' compensation settlement agreement, an MSA is deemed to be a portion of the net proceeds of a workers' compensation settlement unless the agreement specifically states otherwise. For support, UPS cites *In re Marriage of Washkowiak*, 2012 IL App (3d) 110174. In *Washkowiak*, the parties' divorce settlement agreement granted the plaintiff ex-wife 17.5% of "net proceeds" from her ex-husband's workers' compensation settlement. The workers compensation agreement stated that the husband would be awarded " '$365,000 ([which] does not include $70,000 MSA).' " *Id*. ¶ 5. When the trial court awarded the plaintiff $12,250, or 17.5% of the MSA, the husband appealed, arguing that the MSA was not part of the workers' compensation settlement agreement. *Id*. ¶ 6. The appellate court affirmed, finding that "net proceeds" of the husband's workers' compensation settlement included the $70,000 MSA. *Id*. ¶ 10. Relying on *Washkowiak*, UPS asserts that because there is no language specifically excluding the MSA, it should be deemed to be a portion of the next proceeds. We disagree. The court in *Washkowiak* made no holdings as to the meaning of the language stating that the $365,000 award " 'does not include the $70,000 MSA.' " *Id.* ¶ 5. The court was interpreting the parties' divorce settlement, not the workers' compensation settlement, when it held that the "net proceeds" of the husband's settlement included the MSA. UPS cites no other cases to support its assertion that an MSA must be deemed a part of the net proceeds absent language excluding it.

¶ 15    Turning to the language of the settlement, both UPS and Paluch contend it is unambiguous. Of course, they assert different theories about what "unambiguous" means.

¶ 16    Paluch argues that the sentence providing that UPS must pay him "$400,000.00 in a lump sum plus payment of a Medicare Set-Aside (MSA), in annuity form" shows that UPS owed him $400,000 in a lump sum exclusive of UPS's obligation to fund the MSA. Paluch argues that the key word is "plus," and that the MSA was in addition to the lump-sum payment. Paluch further argues that the MSA cannot be part of the $400,000 because when the settlement lists $353,788.16 as the "amount employee will receive," the contract means that UPS must pay $353,788.16 directly to Paluch, not through an MSA. But the $400,000 includes amounts paid to other parties on Paluch's behalf, such as the Blue Cross and Aetna liens. Therefore, the "amount employee will receive" includes amounts that UPS pays to third parties which inure to Paluch's benefit like the MSA.

¶ 17    Conversely, UPS argues that the settlement agreement unambiguously requires UPS to pay Paluch $400,000, which includes the MSA, as evidenced by the fact that when the amounts it must pay for wage-differential benefits, the MSA, and direct reimbursement to Blue Cross Blue Shield and Aetna are added up, the total amount is $400,000. UPS asserts that because it has satisfied all of its obligations under the agreement, the trial court erred in granting Paluch's

- 5 -

motion to reconsider and in entering a judgment in Paluch's favor. But UPS's interpretation fails to acknowledge the ambiguity created by the use of the word "plus" in the first sentence of the agreement. Had the agreement stated that "Petitioner agrees to accept $400,000.00 in a lump sum, which includes payment of a Medicare Set-Aside (MSA)," it would be evident that the parties intended for the MSA to be included in the $400,000 settlement amount.

¶ 18    The agreement has conflicting clauses. The first sentence of the agreement suggests the MSA is not included in the $400,000 award. But the list of specific items the agreement requires UPS to pay Paluch totals $400,000 suggests the MSA is included in the settlement amount. Further, if UPS owes more than what it has paid, the agreement does not state what other obligations UPS might have in addition to the MSA, wage-differential, and liens. Thus, because the four corners of the agreement are ambiguous, we may look to extrinsic evidence to try to determine the parties' intent. *Thompson*, 241 Ill. 2d at 441-42.

¶ 19    Paluch argues the social security rider provides further evidence that the parties intended to exclude the MSA from the net settlement proceeds. The Social Security Administration reduces workers' social security disability benefits if the worker's disability benefits, including workers' compensation settlements, exceed 80% of the employee's predisability earnings. See 42 U.S.C. § 424a(a)(5) (2000). Paluch's workers' compensation settlement award was a lump sum. The social security rider prorated the award across Paluch's life expectancy to use a weekly amount to reduce his social security disability benefits. The amount of the settlement that is dedicated to future medical expenses does not reduce social security benefits and this amount would not be used to calculate the prorated lump sum. 20 C.F.R. § 404.408(d) (2012).

¶ 20    An MSA allocates a certain amount of a settlement toward future medical expenses because Medicare will not pay for medical services that a party was already compensated for by a workers' compensation settlement. See 42 C.F.R. § 411.26 (2006). If a party appears to be shifting his or her obligation to pay for a worker's future medical expenses onto Medicare by dedicating an insufficient amount for future medical expenses, the settlement will not be recognized. *Id.*

¶ 21    Paluch argues that the fact that the parties used the full $400,000 (less attorney fees and other expenses) to calculate the social security rider shows that this amount does not include the MSA. Accordingly, if the $400,000 included the MSA, the parties would have deducted the MSA before calculating the social security rider because the MSA represents future medical expenses. Otherwise, the parties unnecessarily reduced Paluch's social security benefits by using the MSA amount representing future medical expenses.

¶ 22    The Commission does not have the authority to rule on social security matters and the IWCC approved the settlement agreement alone, not the social security rider. While the rider suggests Paluch understood his lump-sum payment would be $353,788.16, weighing against this interpretation, as previously noted, is the wording of the settlement agreement. In his petition for rehearing, Paluch asserts that nondeducted credits from the monetary award entered by the IWCC may not be awarded in a section 19(g) proceeding. Be that as it may, unclear from the record is exactly what amount the IWCC awarded, and contrary to Paluch's contention, the social security rider only adds to the ambiguity in the settlement agreement language rather than clarifying it. To reiterate, what is not at issue is the IWCC's award itself, but whether that award has been paid, and the circuit court has jurisdiction to make that determination, which we hold requires an evidentiary hearing.

¶ 23      Lastly, Paluch asserts an argument alleging that CMS has denied the MSA as insufficient, and therefore, this should change the interpretation of the agreement. UPS denies this assertion. Paluch relies on facts outside of the record, and, thus, the argument will not be considered. *Silvestros v. Silvestros*, 206 Ill. App. 3d 84, 90 (1990).

¶ 24      Precision is important in writing. Otherwise, as here, the ambiguous wording requires an evidentiary hearing. We reverse the trial court's holding and remand for further proceedings consistent with this order.

¶ 25      Reversed and remanded.