# Illinois Official Reports

## Appellate Court

*Millennium Knickerbocker Hotel v. Illinois Workers' Compensation Comm'n*,
2017 IL App (1st) 161027WC

| | |
|---|---|
| Appellate Court Caption | MILLENNIUM KNICKERBOCKER HOTEL, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Rudy Guzman, Jr., Appellee). |
| District & No. | First District, Workers' Compensation Commission Division Docket No. 1-16-1027WC |
| Filed | April 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-50663; the Hon. Kay M. Hanlon, Judge, presiding. |
| Judgment | Circuit court judgment vacated; Commission decision vacated. |
| Counsel on Appeal | Tina R. DiBenedetto and Nadine Neue, of Poulos & DiBenedetto, of Chicago, for appellant. |
| | Domenic Maciariello, of Dworkin & Maciariello, of Chicago, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justices Hoffman, Harris, and Moore concurred in the judgment and opinion. |

¶ 1        Claimant, Rudy Guzman, Jr., sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2006)) for an injury he allegedly sustained while working for respondent, Millennium Knickerbocker Hotel. The parties executed a lump-sum settlement contract, which provided, in part, that respondent had paid all of claimant's medical bills. Almost 2½ years after the Illinois Workers' Compensation Commission (Commission) approved the settlement contract, claimant filed a "Motion to Enforce Contract and Penalties." In the motion, claimant alleged that some of his medical bills remain unpaid and respondent "has refused to honor the [settlement] contract and pay the outstanding medical bills." Claimant requested that respondent be ordered to pay "any and all medical bills that are pending." Claimant also requested the imposition of penalties and attorney fees for respondent's failure to pay the outstanding charges. Following a hearing, the Commission entered an order granting claimant's motion and directing respondent to pay claimant $16,618.88 in medical expenses. The Commission also awarded claimant $8309.44 in penalties pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2012)) and $3323.78 in attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2012)). On judicial review, the circuit court of Cook County confirmed the Commission's order. Respondent then initiated the present appeal.

¶ 2        On appeal, respondent argues that the Commission lacked jurisdiction to hear claimant's motion. Respondent asserts that even if jurisdiction lies with the Commission, the Commission misinterpreted the settlement contract in finding that respondent was obligated to pay claimant's outstanding medical bills. Respondent also argues that the Commission erred in assessing penalties and attorney fees against it. Alternatively, respondent asserts that claimant's motion was barred by equitable estoppel and *laches*. For the reasons set forth below, we find that the Commission lacks jurisdiction to enforce a final award and that the proper venue for a claimant to seek enforcement of a final award of the Commission is in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2012)). Moreover, although the Commission is authorized to assess penalties and attorney fees under the Act against a party who fails to comply with the terms of a final settlement contract approved by the Commission, we conclude that claimant abandoned his request for the imposition of penalties and attorney fees in this case. Accordingly, we vacate both the judgment of the circuit court confirming the order of the Commission and the Commission's order awarding medical expenses, penalties, and attorney fees.

¶ 3                                        I. BACKGROUND

¶ 4        On December 19, 2006, claimant filed an application for adjustment of claim alleging that on October 7, 2006, he sustained an injury to the "rear of head" while in the employ of respondent. Claimant initially treated at Northwestern Memorial Physicians Group, where he was diagnosed as having a contusion to the neck with cervico-thoracic pain. At that time, claimant was authorized to return to work with restrictions until his next appointment. Claimant returned to respondent's employ but ceased working after one day due to pain.

¶ 5        On October 26, 2006, claimant began chiropractic treatment with Melvin D'Souza of St. Anthony's Spine and Joint Institute (St. Anthony's). D'Souza's notes contain the following history of injury:

"The patient stated that on 10/07/2006, he was working, moveing [*sic*] a box weighing about 50 pounds. While he was placing the box on the floor, a ple [*sic*] of boxes [was] about [to] fall on him. However he was able to manage the pile of boxes to stabilize [*sic*] with his right arm. But, one of the boxes from the pile, weighting [*sic*] 20 pounds, fell on his back.

Upon impact, he felt \*\*\* pain in [the] neck and also he felt a popping sound in his lower back. From this incident he developed pain in his neck, upper back and lower back. He has also been experiencing headaches in the back of his head and sometimes on the top."

D'Souza diagnosed claimant with a cervical sprain/strain, a lumbar sprain/strain, a thoracic sprain/strain, and myospasm. Claimant treated with D'Souza until August 2007. At that time, claimant's account balance was $16,618.88.

¶ 6    Meanwhile, on February 6, 2007, claimant underwent an independent medical examination (see 820 ILCS 305/12 (West 2006)) by Dr. Martin Lanoff. As part of this assessment, Dr. Lanoff reviewed claimant's medical records, including those from D'Souza, and conducted a physical examination. In the report of his findings, Dr. Lanoff concluded that claimant did not sustain any lumbar abnormality as a result of the alleged work accident. Rather, Dr. Lanoff opined that, at most, claimant sustained a mild cervico-thoracic strain that should have improved within six to eight weeks after the alleged accident. Dr. Lanoff added that claimant's condition did not warrant any further chiropractic treatment, claimant had reached maximum medical improvement, and claimant could return to full, unrestricted duty.

¶ 7    At some point, the parties began settlement negotiations. To this end, respondent prepared a form agreement entitled "Settlement Contract Lump Sum Petition and Order" (settlement contract). The first page of the settlement contract provided in part that claimant's accident occurred when a "[b]ox fell on [his] neck." The settlement contract listed the body part affected as the "[n]eck" and the nature of the injury as a "[b]ulging disc without nerve involvement." The first page of the settlement contract also contained sections referencing "Temporary Total Disability Benefits" and "Medical Expenses." The section labeled "Temporary Total Disability Benefits" provided that claimant was temporarily totally disabled from October 8, 2006, through January 31, 2007, a period of 16 weeks, during which he received temporary total disability (TTD) benefits at a rate of $346.66 per week. The section labeled "Medical Expenses" had a line to indicate whether the employer had or had not paid all of the employee's medical bills. Respondent checked that it had paid all of claimant's medical bills. The "Medical Expenses" section also instructed the preparer to "[l]ist unpaid bills in the space below." Respondent left that space blank. On the second page of the settlement contract, a paragraph entitled "Terms of Settlement" provided in relevant part as follows:

"Respondent denies that the [claimant] sustained accidental injuries as alleged and further denies any causal connection between the alleged condition of ill-being and the alleged accidental injuries, but to avoid further litigation the Respondent offers and [claimant] accepts a lump sum of $7,800.00 per petition below in full, final, and complete settlement of this claim. Respondent is hereby released, acquitted, and discharged from any and all liability under the \*\*\* Act \*\*\* in any way arising out of the accidental occurrence herein referred to including the known, unknown, fatal or non-fatal, past, present, or future effects, developments, or sequelae including medical and hospital expenses incurred or to be incurred, known or unknown. Review of this

agreement under §8(a) and §19(h) are expressly waived. The lump sum represents 5% loss of use of the man as a whole and hereby settles all disputed issues. Respondent shall retain all rights under Section 5(b) of the *** Act and any other rights and recovery it may have relative to this claim."

Respondent signed the proposed settlement contract on July 31, 2007, and submitted it to claimant. For reasons not entirely clear from the record, neither claimant nor his attorney signed the settlement contract until October 11, 2011, more than four years after respondent. On October 27, 2011, the Commission approved the settlement contract. The settlement amount, less certain fees, was subsequently tendered to and accepted by claimant.

¶ 8    No further proceedings were had in the matter until April 2, 2014, when claimant filed a "Motion to Enforce Contract and Penalties." In the one-page motion, claimant noted that although the settlement contract specifically stated that respondent had paid "all medical bills," claimant has received medical bills that are still unpaid and respondent "has refused to honor the [settlement] contract and pay the outstanding medical bills." Claimant requested that respondent be ordered to pay "any and all medical bills that are pending." In addition, claimant requested penalties pursuant to sections 19(k) and 19(l) of the Act (820 ILCS 305/19(k), (l) (West 2012)) and attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2012)).

¶ 9    In its response to claimant's motion, respondent argued that it did not owe payment for the medical bills in question, which were from D'Souza at St. Anthony's, because it denied payment for these bills before the settlement contract was approved and the settlement contract "contains no language declaring [that] the Respondent assumes any obligation to pay for any past, present, or future medical bills subsequently incurred, or previously denied by the Respondent at any time." Respondent also challenged its liability for the medical bills on the grounds that they are for (1) treatment administered after respondent signed the settlement contract, (2) treatment administered to parts of claimant's body not injured in the alleged work accident, and (3) treatment that is not reasonable or medically necessary to care for claimant's alleged injury. Finally, respondent argued that claimant was barred from seeking payment for the medical bills based on the doctrines of equitable estoppel and estoppel by *laches*.

¶ 10   The matter proceeded to hearing before Commissioner Kevin Lamborn on May 15, 2014, and June 19, 2014. At the beginning of the hearing, the following exchange occurred between Commissioner Lamborn and claimant's attorney:

"THE COMMISSIONER: This is Guzman versus Millennium Knickerbocker, 06 WC 54368. This is a Motion to Enforce Contract.

It is also a motion for payment of—well, a Motion for Enforcement of Contract and Medical Bills. It says penalties on here but I don't see a specific petition.

MR. MACIARIELLO [claimant's attorney]: I don't think penalties is [*sic*] in issue. There are no penalties asked for.

THE COMMISSIONER: I don't see that, so a Motion to Enforce Contract and specifically for Payment of Medical Bill and/or Bills.

MR. MACIARIELLO: One bill."

Thereafter, the parties argued their respective positions.

- 4 -

¶ 11    On August 12, 2015, the Commission entered an order granting respondent's motion.[1] The Commission concluded that pursuant to the plain language of the settlement contract, respondent remained liable for payment of the outstanding medical charges. The Commission explained:

> "Though Respondent argued that the Settlement Contract did not obligate it to pay the medical charges of St. Anthony [*sic*], its argument is misplaced. The face of the contract indicated that 'ALL' medical bills were 'paid.' This language is not ambiguous.
>
> The remaining language in the contract stated that the Respondent was not liable for [claimant's] medical bills 'incurred or to be incurred, known or unknown.' This does not equate to a denial of liability for known medical charges."

As a result, the Commission directed respondent to pay claimant $16,618.88 for medical expenses under section 8(a) of the Act (820 ILCS 305/8(a) (West 2012)).

¶ 12    In addition, the Commission found respondent's refusal to pay the medical charges both unreasonable and vexatious. The Commission based this finding on "the plain language of the contract, and the fact that it was Respondent that drafted and submitted the contract document to the [claimant]." The Commission remarked that if respondent "had not intended to pay the charges of St. Anthony's *** in the amount of $16,188.88 [*sic*], it should have drafted a settlement document that stated that all medical bills were not paid." The Commission denied claimant's request for penalties under section 19(*l*) of the Act (820 ILCS 305/19(*l*) (West 2012)), but awarded claimant $8309.44 in penalties under section 19(k) of the Act (820 ILCS 305/19(k) (West 2012)) and $3323.78 in attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2012)).

¶ 13    Thereafter, respondent sought judicial review of the Commission's order in the circuit court of Cook County. On March 10, 2016, following a hearing, the circuit court confirmed the order of the Commission in its entirety. Following the denial of its motion to reconsider, respondent initiated this appeal.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, respondent challenges the Commission's decision on various grounds. Initially, respondent contends that the Commission lacked jurisdiction to consider claimant's motion. Respondent asserts that even if jurisdiction lies with the Commission, the Commission misinterpreted the settlement contract, erred in ordering it to pay claimant's outstanding medical bills, and improperly awarded claimant penalties and attorney fees. Alternatively, respondent argues that claimant was barred from seeking payment for the medical bills based on the doctrines of equitable estoppel and *laches*. We begin our analysis with respondent's jurisdictional argument.

---

[1] In its decision, the Commission refers to two motions filed by claimant, a "Motion to Enforce Payment of Medical Bills" and a "Motion for Penalties." According to the Commission, the former motion set forth the reasons why respondent remained responsible for the medical bills, while the latter motion "premised a plea for penalties upon the first [motion]." As noted above, however, Commissioner Lamborn only referenced one motion. Moreover, our review of the record reveals only a single, one-page motion filed on April 2, 2014.

¶ 16    According to respondent, pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2012)), the circuit court, not the Commission, was the proper venue to consider claimant's "Motion to Enforce Contract and Penalties" because the motion seeks payment of compensation pursuant to a final award of the Commission. Respondent adds that the Commission, in assuming that it had jurisdiction to address claimant's motion, "rendered §19(g) void and moved against statutory construction." In response, claimant cites to *Flynn v. Industrial Comm'n*, 94 Ill. App. 3d 844, 849-50 (1981), for the proposition that the Commission properly exercised jurisdiction over his motion.

¶ 17    At the outset, we note that although respondent raises the jurisdictional issue for the first time before this court, we may address the matter, for the lack of subject matter jurisdiction may be raised at any time. *Jones v. Industrial Comm'n*, 335 Ill. App. 3d 340, 343 (2002); *Campbell v. White*, 187 Ill. App. 3d 492, 504 (1989).

¶ 18    "The [C]ommission is an administrative body created by legislative enactment for the purpose of administering the [Act]." *Trigg v. Industrial Comm'n*, 364 Ill. 581, 587 (1936); see also *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005); *Michelson v. Industrial Comm'n*, 375 Ill. 462, 466 (1941). As such, the Commission lacks the inherent powers of a court and can only make such orders as are within the powers granted to it by the legislature. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 16; *Michelson*, 375 Ill. at 466-67. Consequently, when the Commission acts outside of its specific statutory authority, it acts without jurisdiction. *Alvarado*, 216 Ill. 2d at 553-54.[2]

¶ 19    Section 19(f) of the Act (820 ILCS 305/19(f) (West 2012)) provides that "[t]he decision of the Commission acting within its powers *** shall, in the absence of fraud, be conclusive unless reviewed as in this paragraph hereinafter provided." The Act further provides that review of a decision of the Commission shall be had in the circuit court and shall be commenced "within 20 days of the receipt of notice of the decision of the Commission." 820 ILCS 305/19(f)(1) (West 2012). As our supreme court has recognized, a settlement contract approved by the Commission has the same legal effect as an award entered by the Commission. *Alvarado*, 216 Ill. 2d at 555; *Ahlers v. Sears, Roebuck Co.*, 73 Ill. 2d 259, 264-65 (1978). Thus, a settlement contract approved by the Commission becomes a final award after 20 days if no petition for review is filed in the circuit court. *Alvarado*, 216 Ill. 2d at 558; *Burzic v. Illinois Workers' Compensation Comm'n*, 391 Ill. App. 3d 202, 208 (2009). In the present case, the Commission approved the settlement contract on October 27, 2011, and neither party sought judicial review thereof. Thus, the settlement contract at issue constitutes a final award under the Act.

¶ 20    Respondent asserts that because the settlement contract constitutes a final award, claimant did not seek review of the settlement contract within 20 days after its approval, and claimant's motion seeks enforcement of the settlement contract, the Commission lost jurisdiction over the matter and claimant should have filed his motion in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2012)). We agree with respondent, in part.

---

[2]In *Alvarado*, the supreme court noted that although the term "jurisdiction" is not strictly applicable to an administrative body, the term may be used to designate the authority of an administrative body to act. *Alvarado*, 216 Ill. 2d at 554 (citing *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989)).

¶ 21    Under the Act, the Commission has no power to enforce payment of its own award. *Smith v. Gen Co. Corp.*, 11 Ill. App. 3d 106, 110 (1973). Rather, the only method to enforce a final award of the Commission is in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2012)). *Aper v. National Union Electric Corp.*, 165 Ill. App. 3d 482, 483 (1988) (noting that section 19(g) serves to "provide a recipient of compensation a method of enforcing its award, because the *** Commission *** has no power to do so"); see also *Smith*, 11 Ill. App. 3d at 110. Section 19(g) states in relevant part as follows:

> "Except in the case of a claim against the State of Illinois, either party may present a certified copy of the award of the Arbitrator, or a certified copy of the decision of the Commission when the same has become final, when no proceedings for review are pending, providing for the payment of compensation according to this Act, to the Circuit Court of the county in which such accident occurred or either of the parties are residents, whereupon the court shall enter a judgment in accordance therewith. In a case where the employer refuses to pay compensation according to such final award or such final decision upon which such judgment is entered the court shall in entering judgment thereon, tax as costs against him the reasonable costs and attorney fees in the arbitration proceedings and in the court entering the judgment for the person in whose favor the judgment is entered, which judgment and costs taxed as therein provided shall, until and unless set aside, have the same effect as though duly entered in an action duly tried and determined by the court, and shall with like effect, be entered and docketed." 820 ILCS 305/19(g) (West 2012).

The purposes of section 19(g) are twofold. First, it permits the speedy entry of judgment in cases in which there has been a refusal to pay the award. *Ahlers*, 73 Ill. 2d at 268; *Konczak v. Johnson Outboards*, 108 Ill. App. 3d 513, 516 (1982). Second, it serves to compensate a claimant who is compelled to incur additional expense by reason of the refusal to pay an award by allowing him court costs and attorney fees. *Franklin v. Wellco Co.*, 5 Ill. App. 3d 731, 734 (1972). We note, of course, that a circuit court's inquiry under section 19(g) is limited to determining whether the requirements of the section have been met. *Ahlers*, 73 Ill. 2d at 268; *Konczak*, 108 Ill. App. 3d at 516. As such, the court may not question the jurisdiction of the Commission or the legality of its actions, and it may not review the Commission's decision or otherwise construe the Act. *Ahlers*, 73 Ill. 2d at 268; *Konczak*, 108 Ill. App. 3d at 516-17.

¶ 22    The only defense to a section 19(g) application is full payment of the final award. *Dallas v. Ameren CIPS*, 402 Ill. App. 3d 307, 312 (2010); *Aurora East School District v. Dover*, 363 Ill. App. 3d 1048, 1055 (2006). Whether an employer has refused to pay an arbitration award is a question of fact. *Paluch v. United Parcel Service, Inc.*, 2014 IL App (1st) 130621, ¶ 12. In assessing whether there has been a refusal to pay, the circuit court may consider a variety of factors, including, but not limited to: (1) whether a demand was made for payment; (2) the length of time that transpired between the date the Commission's award became final and the filing of the section 19(g) application; (3) the negotiations and communications between the parties that took place during this period; (4) whether the Commission's award leaves room for a good-faith disagreement as to the amount of the payments; and (5) whether and when a good-faith offer of settlement was presented. *Paluch*, 2014 IL App (1st) 130621, ¶ 12. The *Paluch* court noted that determining whether the Commission's decision leaves room for disagreement over the amount owed and whether the amount has been paid by the employer requires an examination of the settlement itself. *Paluch*, 2014 IL App (1st) 130621, ¶ 12.

Moreover, where the settlement contract is found to be ambiguous, the circuit court may hold an evidentiary hearing to address the matter. *Paluch*, 2014 IL App (1st) 130621, ¶ 22.

¶ 23    In light of the foregoing, we conclude that a section 19(g) proceeding in the circuit court is the proper venue for claimant to seek enforcement of the settlement contract, which constitutes a final award of the Commission. As noted earlier, in his April 2, 2014, "Motion to Enforce Contract and Penalties," claimant asserted that although the settlement contract specifically stated that respondent had paid "all medical bills," there remained outstanding unpaid bills and respondent had "refused to honor the [settlement] contract and pay his outstanding medical bills." Respondent disputed claimant's interpretation of the settlement contract and argued that it did not owe payment for the medical bills in question. In other words, the parties' dispute does not involve review as to whether claimant was entitled to an award under the Act or an interpretation of the Act itself. Rather, it centers on whether the award set forth in the settlement contract had been paid in full. Only the circuit court, pursuant to section 19(g) of the Act, has jurisdiction to make that determination. Moreover, if necessary, the court may hold an evidentiary hearing to resolve the parties' dispute. *Paluch*, 2014 IL App (1st) 130621, ¶ 22. Additionally, the circuit court may tax costs and attorney fees as set forth in section 19(g) if, in ruling on a section 19(g) application, it determines that there was a refusal to pay the compensation due according to the Commission's final award. 820 ILCS 305/19(g) (West 2012).

¶ 24    Claimant does not direct us to any relevant statutory provision that would allow the Commission to enforce a final award.[3] Instead, he simply directs us to *Flynn*, 94 Ill. App. 3d 844, in support of his claim that the Commission had jurisdiction to hear his motion. However, we find claimant's reliance on *Flynn* misplaced. In *Flynn*, the claimant sought benefits under the Act for multiple injuries sustained while working for the respondent. The parties settled the claims by lump-sum settlement contracts. The Commission subsequently approved the agreements. After the respondent failed to tender payment under the contracts, the claimant filed with the Commission a petition pursuant to section 19(k) of the Act (Ill. Rev. Stat. 1979, ch. 48, ¶ 138.19(k)). That provision permits the Commission to award penalties "[i]n case [*sic*] where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation." The Commission, finding that the respondent refused to make payment, awarded penalties to the claimant. Despite the Commission's ruling, the respondent persisted in its refusal to make payment. As a result, the claimant instituted actions in the circuit court pursuant to section 19(g) of the Act (Ill. Rev. Stat. 1979, ch. 48, ¶ 138.19(g)). The respondent moved to dismiss the actions, claiming that neither the Commission nor the circuit court had jurisdiction to award or enforce the penalty provisions of the Act following the Commission's approval of the lump-sum settlement contracts. The circuit court agreed, and the claimant's cases were dismissed.

---

[3]In addressing the jurisdictional issue, the only statutory provision claimant cites is section 4(c) of the Act (820 ILCS 305/4(c) (West 2012)). According to claimant, that section provides that "the Commission may order and direct that an insurer practicing 'a policy of delay or unfairness toward employees in the adjustment, settlement, or payment of benefits due such employees' discontinue the writing of workers' compensation insurance in Illinois." Claimant does not explain the relevance of this provision to the jurisdictional issue and it is not readily apparent to us.

¶ 25    On appeal, the *Flynn* court reversed. *Flynn*, 94 Ill. App. 3d at 850. The court determined that the Commission is authorized to assess penalties pursuant to section 19(k) of the Act following approval of a settlement contract. *Flynn*, 94 Ill. App. 3d at 849-50. The court reasoned that a contrary holding would allow a party "to enter into settlement contracts which they could vexatiously refuse to pay without fear of penalties." *Flynn*, 94 Ill. App. 3d at 849-50. In support of its finding, the *Flynn* court relied on *Board of Education of the City of Chicago v. Industrial Comm'n*, 351 Ill. 128, 130-31 (1932), in which the supreme court rejected the argument that the Commission lacks jurisdiction to impose penalties pursuant to section 19(k) of the Act after an award becomes final.

¶ 26    *Flynn* is procedurally distinct from the present case. In *Flynn*, the claimant prosecuted an action with the Commission under section 19(k) of the Act. Only after prevailing on his petition for penalties did he seek to enforce the award in the circuit court pursuant to section 19(g) of the Act. Here, in contrast, claimant sought to enforce a final award of the Commission before the Commission itself. Claimant, however, cites no statutory authority or case law that would permit him to proceed in such a manner.

¶ 27    Although not cited by claimant, we note that we recently addressed an issue similar to the one presented here in *Loyola University of Chicago v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 130984WC. In that case, the parties executed a lump-sum settlement contract, which the Commission later approved. After the Commission's award became final, the claimant filed with the Commission a petition for penalties and attorney fees pursuant to sections 16, 19(k) and 19(*l*) of the Act, alleging that the respondent failed to comply with a provision in the settlement contract related to the reimbursement of the overpayment of long-term disability benefits. The claimant asked the Commission to order the respondent to tender the reimbursement amount to the claimant's insurer in addition to assessing penalties and fees against the respondent. The respondent argued that the Commission lacked jurisdiction to consider the claimant's petition and that the circuit court, pursuant to section 19(g) of the Act, was the proper venue to address the claimant's allegations. Relying on *Flynn*, the Commission concluded, *inter alia*, that it had jurisdiction to decide the claimant's petition. It then examined the language of the settlement contract and held that the respondent was liable for the reimbursement amount. On judicial review, the circuit court set aside the Commission's decision, finding that the Commission lacked jurisdiction to construe the settlement contract.

¶ 28    On appeal, we reversed the circuit court. We concluded that pursuant to *Flynn*, the Commission is authorized to assess penalties and attorney fees under the Act against a party who fails to comply with the terms of a final settlement contract approved by the Commission. *Loyola University of Chicago*, 2015 IL App (1st) 130984WC, ¶ 18. We further noted that the Commission could not decide if the assessment of penalties and attorney fees was proper without first interpreting the terms of the settlement contract to determine if the respondent was liable for the reimbursement amount. *Loyola University of Chicago*, 2015 IL App (1st) 130984WC, ¶ 19. Although the claimant in *Loyola University of Chicago* appears to have filed a combined motion seeking penalties *and* the enforcement of the underlying award, we did not directly address in that case whether the Commission had jurisdiction to enforce an award. Had we addressed that matter, we would have concluded that the Commission lacked jurisdiction to do so. Thus, to the extent that *Loyola University of Chicago* may be interpreted as implicitly endorsing a procedure whereby a party may seek before the Commission the enforcement of a

final award in conjunction with a petition for attorney fees and penalties pursuant to sections 16, 19(k), and 19(*l*) of the Act, we decline to follow it.

¶ 29    Turning again to the facts of the present case, we note that claimant's motion is captioned "Motion to Enforce Contract and Penalties." In the motion, claimant sought an order requiring respondent to pay "any and all medical bills that are pending." Claimant also requested the imposition of penalties pursuant to sections 19(k) and 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2012)) and attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2012)). Thus, claimant's motion is a combined motion seeking two distinct types of relief. Pursuant to our holding today, the Commission clearly lacked the authority to enforce its final award. Thus, we are compelled to vacate the portion of the Commission's order requiring respondent to pay claimant's pending medical expenses.

¶ 30    Moreover, although the Commission had jurisdiction to address the portion of the combined motion requesting penalties and attorney fees (see *Loyola University of Chicago*, 2015 IL App (1st) 130984WC, ¶ 18; *Flynn*, 94 Ill. App. 3d at 848-50), we find that the Commission erred in entering an award of penalties and attorney fees because claimant abandoned his request for such relief at the hearing before Commissioner Lamborn. In this regard, the record establishes that when Commissioner Lamborn inquired about the issue of penalties, claimant's attorney responded, "[t]here are no penalties asked for." Furthermore, claimant's attorney did not argue the issue of penalties or attorney fees at the hearing that followed. Under these circumstances, we find that claimant abandoned the issue of penalties and attorney fees. Therefore, we are also compelled to vacate that portion of the Commission's order awarding penalties and attorney fees. In light of our holding, we do not address the remaining issues raised by respondent.

¶ 31                          III. CONCLUSION

¶ 32    In short, for the reasons set forth above, we find that the circuit court, pursuant to section 19(g) of the Act, is the proper venue to seek enforcement of a Commission's final award. Moreover, although the Commission is authorized to assess penalties and attorney fees under the Act against a party who fails to comply with the terms of a final settlement contract, the imposition of penalties and attorney fees in this case was improper because claimant abandoned his request for such relief. Accordingly, we vacate both the judgment of the circuit court of Cook County and the order of the Commission. In doing so, we express no opinion regarding the interpretation of the settlement contract provisions at issue or whether an award of penalties, costs, or attorney fees under any provision of the Act is appropriate.

¶ 33    Circuit court judgment vacated; Commission decision vacated.