# Illinois Official Reports

## Appellate Court

---

> ### *Centeno v. Illinois Workers' Compensation Comm'n,*
> ### 2020 IL App (2d) 180815WC

---

| | |
|---|---|
| Appellate Court Caption | NELSON CENTENO, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Minute Men of Illinois, Appellee). |
| District & No. | Second District, Workers' Compensation Commission Division No. 2-18-0815WC |
| Filed | March 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 18-MR-15; the Hon. Kevin T. Busch, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. Cause remanded. |
| Counsel on Appeal | Michael Lulay, of Lulay Law Offices, of Naperville, for appellant. Victor P. Shane, of Scopelitis, Garvin, Light, Hanson & Feary, of Chicago, for appellee. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hoffman, Cavanagh, and Barberis concurred in the judgment and opinion.

## OPINION

¶ 1     Claimant, Nelson Centeno, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2010)), seeking benefits for injuries he allegedly sustained on October 7, 2010, while in the employ of respondent, Minute Men of Illinois. Following a hearing pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2010)), the arbitrator found claimant's injuries to be compensable and awarded him temporary total disability (TTD) benefits, reasonable and necessary medical expenses, and prospective medical care. The Illinois Workers' Compensation Commission (Commission) reduced the award of medical expenses but otherwise affirmed and adopted the arbitrator's decision and remanded the matter for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980). On judicial review, the circuit court of Kane County increased the weekly TTD rate but otherwise confirmed the Commission's decision. Claimant filed a timely appeal to this court. We affirmed the judgment of the circuit court. *Centeno v. Illinois Workers' Compensation Comm'n*, 2016 IL App (2d) 150575WC-U (*Centeno I*).

¶ 2     While *Centeno I* was pending in this court, claimant filed a "Petition for an Immediate Hearing" pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2016)). At the hearing on the section 19(b) petition, respondent elicited testimony from claimant, suggesting that he had been employed under two different identities. Thereafter, claimant's attorney requested that the proceeding be bifurcated due to a "breakdown" in the attorney-client relationship that made him question whether he could ethically remain as claimant's counsel. The arbitrator granted the request. When the hearing resumed a month later, claimant's attorney announced that he would continue representing claimant but moved to withdraw the section 19(b) petition. The arbitrator denied the motion to withdraw and heard additional evidence. Ultimately, the arbitrator declined to award claimant any benefits subsequent to the first section 19(b) hearing. The Commission affirmed and adopted the decision of the arbitrator and remanded the matter for further proceedings pursuant to *Thomas*, 78 Ill. 2d 327. On judicial review, the circuit court confirmed the decision of the Commission. Claimant now appeals, arguing that, for various reasons, the Commission's decision should be reversed. We affirm in part, reverse in part, and remand this matter to the Commission for further proceedings.

¶ 3                                    I. BACKGROUND
¶ 4     The evidence adduced at claimant's initial arbitration hearing is set forth fully in this court's decision in *Centeno I*, 2016 IL App (2d) 150575WC-U. We repeat that evidence here only to the extent necessary to provide an understanding of the events leading to this appeal and to place into context the issues raised by claimant.

¶ 5     On November 15, 2010, claimant filed an application for adjustment of claim pursuant to the Act, seeking benefits for injuries he allegedly sustained to his left foot, left leg, and back on October 7, 2010, while working for respondent. Claimant subsequently filed a petition for

attorney fees and penalties pursuant to sections 16, 19(k), and 19(*l*) of the Act (820 ILCS 305/16, 19(k), (*l*) (West 2010)) and a petition for payment of prior unpaid medical bills and prospective medical care pursuant to section 8(a) of the Act (820 ILCS 305/8(a) (West 2010)).

¶ 6 The matter proceeded to a hearing pursuant to section 19(b) of the Act (820 ILCS 305/19b) (West 2010)) on September 7, 2012. The evidence presented at the arbitration hearing demonstrated that claimant sustained a fall at work on October 7, 2010. Claimant was diagnosed with a left ankle fracture, a sprain of the left knee, and a sprain/strain of the lumbar spine. Claimant sought treatment for his injuries from various medical professionals, including Dr. David Freeland (a chiropractor with West Chicago Chiropractic), Dr. Howard Freedberg (an orthopedic surgeon who mainly treated claimant's left lower extremity), and Dr. Thomas McNally (an orthopedic surgeon who treated claimant's back). On October 24, 2011, Dr. Freedberg released claimant from his care with light-duty restrictions relative to the left ankle injury. Thereafter, claimant continued to treat for his back with Dr. McNally, who determined that claimant's back injury rendered him medically unable to work. Following the failure of conservative treatment, Dr. McNally recommended claimant undergo a lumbar discogram and possible fusion surgery.

¶ 7 At respondent's request, claimant underwent an independent medical examination by Dr. G. Claud Miller, an orthopedic surgeon. Dr. Miller diagnosed low-back pain, most likely secondary to degenerative disc disease. Dr. Miller opined that while claimant may have suffered a lumbar sprain as a result of the work accident, the sprain should have resolved within two or three weeks and there was insufficient evidence to substantiate a causal relationship between claimant's current condition of ill-being of his back and the work accident. Based on Dr. Miller's evaluation, respondent disputed whether claimant's low-back injury was causally related to the work accident. Respondent subsequently notified claimant by letter that because he had been released from treatment for his left ankle injury and the back injury was disputed, it would cease paying TTD benefits after November 3, 2011. Respondent also submitted claimant's chiropractic treatment to a clinical peer report and utilization review by Dr. Reese Polesky, an orthopedic surgeon. Dr. Polesky opined that only six sessions of chiropractic treatment were appropriate.

¶ 8 Based on the foregoing evidence, the arbitrator found that claimant sustained accidental injuries arising out of and in the course of his employment and that his conditions of ill-being (including his back) were causally related to the accident. The arbitrator awarded claimant TTD benefits of $319 per week for $100^{1}/_{7}$ weeks, from October 8, 2010, through September 7, 2012. The arbitrator also awarded claimant $97,243.01 as reasonable and necessary medical expenses and found that claimant was entitled to prospective medical care prescribed by Dr. McNally, "including the discogram and the fusion surgery should Dr. McNally still deem it recommended after the discogram, and any treatment that is reasonable and necessary to recover from the surgery." The arbitrator denied claimant's request for attorney fees and penalties, concluding that a legitimate dispute existed with respect to the severity of claimant's low-back condition of ill-being and any treatment associated therewith.

¶ 9 Both parties sought review of the arbitrator's decision before the Commission. The Commission modified the arbitrator's decision by reducing claimant's award of medical expenses to $66,781.33, based upon its finding that only his six initial visits to the chiropractor for low-back treatment were reasonable and necessary. The Commission otherwise affirmed and adopted the arbitrator's decision and remanded the matter for further proceedings pursuant

to *Thomas*, 78 Ill. 2d 327. Both parties filed timely petitions for judicial review in the circuit court of Kane County. The circuit court increased the weekly TTD rate but otherwise confirmed the Commission's decision. Claimant filed a timely appeal to this court, challenging only those portions of the Commission's decision reducing his medical expenses and affirming the arbitrator's denial of attorney fees and penalties. In an order dated June 21, 2016, this court affirmed the judgment of the circuit court. *Centeno I*, 2016 IL App (2d) 150575WC-U.

¶ 10    While *Centeno I* was pending in this court, claimant filed a "Petition for an Immediate Hearing" pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2014)). A hearing on the petition commenced on December 21, 2015, before Arbitrator Carolyn Doherty. At the beginning of the hearing, claimant indicated that he was seeking TTD benefits and medical expenses incurred since the date of the first section 19(b) hearing, unpaid TTD benefits and medical expenses awarded at the first section 19(b) hearing, prospective medical care ordered at the first section 19(b) hearing but not yet authorized by respondent, attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2014)), and penalties pursuant to sections 19(k) and 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2014)). Respondent disputed that there was a causal connection between claimant's work accident and his "condition of ill-being subsequent to the issuance of the prior decision."

¶ 11    At the hearing, claimant testified that he suffers back pain "all of the time" and rated the discomfort at 8 on a 10-point scale. Claimant denied sustaining any new accidents or injuries to his body since the incident in October 2010 and testified that he has not worked since the first arbitration hearing. Claimant testified that his last treatment with Dr. McNally prior to the first section 19(b) hearing was on December 22, 2011. Claimant did not see Dr. McNally again until April 3, 2014. Thereafter, claimant saw Dr. McNally in June 2014 and August 2015. Dr. McNally continued to recommend a discogram and surgery for claimant's back. However, respondent refused to pay for these procedures. Claimant indicated that he would like to proceed with the procedures recommended by Dr. McNally. Claimant further testified that respondent has not paid for any medical care incurred before or after the first section 19(b) hearing.

¶ 12    On cross-examination, claimant denied applying for work with any employer in the last five years. Claimant explained that he has been incapable of work since his accident date of October 7, 2010, due to the injuries to his back, ankle, and leg. Claimant noted that while Dr. Freedberg released him to return to light duty with regard to his ankle injury, he remained off work due to his back problems.

¶ 13    On further cross-examination, claimant was asked if he ever applied for a position with Countywide Landscaping (Countywide). Claimant responded that he worked for Countywide before he sustained the work injury at issue. However, he denied working for Countywide after October 2010. Respondent showed claimant a job application for Countywide dated May 13, 2013. Claimant admitted that the social security number on the application was his, but he could not recall if he lived at the address listed on the application. In addition, he denied that the signature on the application was his. Respondent also showed claimant a W-2 wage statement for 2013 from Countywide with the name "Nelson Centeno" and claimant's social security number. Claimant denied seeing or receiving the W-2. Claimant also denied using any name other than "Nelson Centeno." He testified that "Nelson Centeno" has been his "real name" since he has been in Illinois. He denied identifying as an individual named "Roberto Morales" or knowing an individual with that name. Claimant stated that he did not remember

- 4 -

being arrested by a West Chicago police officer in 2014 or being charged with identity theft and forgery.

¶ 14    Claimant testified that his current address is "425 Harrison" and that he was living at that address on September 3, 2014. Respondent showed claimant an application for adjustment of claim filed on September 3, 2014, for an accident on August 7, 2014, under the name "Roberto Morales." Claimant denied filing the application for adjustment of claim. Claimant acknowledged that the address on the application was his but stated that the building is a duplex and he did not know if someone named "Roberto Morales" lived in the building's other unit.

¶ 15    Claimant denied living at other addresses mentioned by respondent, including an address on South Kings Court in West Chicago, Illinois, or on Pricilla Street in Bridgeport, Connecticut. Respondent showed claimant an IRS notice from 2007 sent to an address in Connecticut. Claimant acknowledged that the notice listed his name and Social Security number. However, he denied ever being in Connecticut. Claimant did admit to securing a Michigan driver's license with a picture of himself under the name of "Nelson Centeno," which was issued on November 9, 2012, and had an expiration date of November 10, 2016. After being shown a United States Resident Card issued on November 24, 2011, with the name of "Roberto Morales," claimant denied the photo on the document was him.

¶ 16    Following claimant's testimony, his attorney, Michael Lulay, stated he had no additional witnesses but reserved the right to recall claimant in rebuttal. Respondent's attorney informed the arbitrator that he had two witnesses to call, including Detective John Zurick of the West Chicago Police Department. Before respondent's attorney could call Zurick, Lulay made the following statement:

> "[T]here's been a breakdown in my relationship with my client in that there's a to continue to represent this gentlemen, he may be going to discharge me and, therefore, I would like an opportunity to resolve that difference and come back before we put on anything."

Respondent's attorney objected, noting that the parties were "halfway" through the case and he wanted to present witnesses to challenge claimant's credibility. The arbitrator asked Lulay if he was asking to withdraw. Lulay responded:

> "I am not. It's not my intention myself to withdraw although that might become a necessity. At this juncture, it's been expressed to me that there is—well, I can't actually say what's been expressed to me about the reasons that he might not want me to continue. But it is in fact a case that ethically I am precluded and this is not the kind of ethical dilemma that I'm allowed to waive and while I certainly understand sometime these ethical dilemmas can cause a lack of courtesies and convenience, it's not something that can be helped in this situation.
>
> And I am only asking for another date to finish this if at all while I'm in the case if I remain in the case. Obviously if I don't, then whatever other counselor comes in and takes the position, you'll rule on at that time.
>
> But at this juncture I'm not ethically in a position to continue to represent someone who has expressed to me what they have."

After further discussion, the arbitrator granted Lulay's motion and continued the matter.

¶ 17    The hearing resumed on January 25, 2016. Although claimant did not attend the hearing, Lulay did appear and informed the arbitrator that he had agreed to continue representing

claimant. Lulay then moved to withdraw claimant's section 19(b) petition. Respondent's attorney opposed the motion. The arbitrator denied the motion to withdraw, noting that the sole purpose of the bifurcation was to allow Lulay to resolve ethical issues and that a withdrawal would prejudice respondent.

¶ 18    Thereafter, respondent called two witnesses, Zurick and Rhonda Sitterly. Zurick, a detective with the West Chicago Police Department, testified that he was assigned to investigate a report of identity theft involving the name "Nelson Centeno." To this end, in February 2014, Zurick learned that an individual with that name was employed at Countywide. Zurick personally spoke with the individual at a Countywide job site. Zurick testified that the individual admitted to purchasing the name "Nelson Centeno" and a Social Security card with a fraudulent number. During an interview at the police station, the individual admitted that his name was "Roberto Morales." Zurick was present at the December 21, 2015, hearing and testified that the individual who appeared as claimant at that hearing was known to him as both "Roberto Morales" and "Nelson Centeno."

¶ 19    Sitterly testified that she has been the office manager for Countywide since 2011. In her capacity as office manager, Sitterly is responsible for the company's personnel records. Sitterly testified that, at any given time, Countywide employees 30 individuals. Sitterly testified that an individual by the name of "Nelson Centeno" worked for Countywide. Sitterly testified that in the normal course of business, Countywide keeps a wage ledger detailing payments made to each employee. Sitterly identified respondent's exhibit No. 9 as the wage ledger for "Nelson Centeno." Sitterly testified that the wage ledger reflects pay dates to "Nelson Centeno" in 2006, 2007, 2008, 2013, and 2014.

¶ 20    Sitterly testified that in February 2014, Centeno asked her to change the name on his payroll checks to "Roberto Morales." Sitterly responded that she could not "do that legally unless [she] had something telling [her] that's who he was." About two weeks later, Centeno returned and handed Sitterly two documents, a "resident card" and a Social Security card, both with the name "Roberto Morales." Sitterly identified respondent's exhibit No. 6 as the documents Centeno brought to her. Sitterly testified that the wage ledger reflects pay dates to "Roberto Morales" for 2006, 2007, 2008, 2009, 2010, and 2014. Sitterly acknowledged that because she did not start working for Countywide until 2011, she is not sure what happened between the years 2010 and 2014 or whether the "Roberto Morales" who worked for Countywide in 2014 was the same "Roberto Morales" who worked for the business prior to 2014.

¶ 21    Sitterly also testified about a letter she wrote on May 27, 2015, informing the child support enforcement services division in Connecticut of a change in identity from "Nelson Centeno" to "Roberto Morales." She further indicated in the letter, as well as her testimony, that after Centeno's name change to Morales, he filed an application for adjustment of claim with the Commission against Countywide. The application for adjustment of claim alleged that Morales sustained injuries to his back and legs from a lifting accident on August 7, 2014. Following Sitterly's testimony, the parties rested.

¶ 22    On March 23, 2016, the arbitrator issued a decision denying claimant all relief requested. The arbitrator first addressed whether claimant had established a causal connection between his employment with respondent and his condition of ill-being subsequent to the first section 19(b) hearing in September 2012. The arbitrator noted that claimant sought no new or additional treatment subsequent to the first section 19(b) hearing for his left ankle or leg. Regarding claimant's back, the arbitrator observed that there was a gap of more than two years

between when claimant sought treatment with Dr. McNally in December 2011 and he next sought treatment with Dr. McNally in April 2014. The arbitrator concluded that this gap in treatment was "detrimental" to claimant's claim of continued causal connection between his October 2010 work injury and his low-back condition, as well as any claim for medical expenses incurred after the September 2012 hearing. The arbitrator declined to make any new findings on the issue of prospective medical care "based on the substantially similar treatment options presented by Dr. McNally in 2011 and 2014." Based on the significant gap in treatment between 2011 and 2014, the arbitrator also found that claimant was temporarily totally disabled only through September 7, 2012, the date of the first section 19(b) hearing. In finding no further period of temporary total disability, the arbitrator additionally noted that "substantial evidence was presented which places great doubt on [claimant's] claimed inability to work during his currently claimed period of TTD commencing 9/7/12 through the present." With respect to the issue of attorney fees and penalties, the arbitrator found that respondent's conduct "in the delayed or failed payment of TTD ordered in the first 19(b) trial" was not so unreasonable or vexatious as to justify the imposition of attorney fees or penalties under sections 16, 19(k), or 19(*l*) of the Act. Finally, the arbitrator found it premature to address claimant's request for attorney fees and penalties stemming from respondent's failure to pay previously awarded medical expenses given the then-pending appeal of *Centeno I* in this court.

¶ 23    Claimant sought review of the arbitrator's decision before the Commission. On December 15, 2017, the Commission issued a decision and opinion on review, affirming and adopting the decision of the arbitrator and remanding the matter for further proceedings pursuant to *Thomas*, 78 Ill. 2d 327. The Commission began its analysis with the following statement:

"After reviewing the record, the Commission is compelled to comment on the disingenuous actions of the Petitioner Nelson Centeno a/k/a Roberto Morales. Centeno filed a second claim under the name Roberto Morales (14 WC 29803). During the arbitration hearing on that claim, Petitioner Morales admitted that he used the stolen identity of Nelson Centeno. Because of this admission, these two cases are so inextricably intertwined that the transcript in *Morales* and the transcript in *Centeno* must be considered together. The Commission, therefore, amends the Application for Adjustment of Claimfiled in the Nelson Centeno case and the Application for Adjustment of Claim filed in the Roberto Morales case, *sua sponte*, to reflect the name Nelson Centeno a/k/a Roberto Morales. The Commission further attaches to its Decision the Arbitrator's Decision and considers the transcript from the Roberto Morales case (14 WC 29803) as Commission's Exhibit 1, so that a reviewing court has a full understanding of the dishonest nature of the Petitioner, Nelson Centeno a/k/a Roberto Morales."

The Commission noted that during oral arguments before it in the case, an attorney with Lulay's office sought enforcement of the first arbitrator's decision, along with TTD benefits and penalties for nonpayment of medical expenses. The Commission, relying on *Millennium Knickerbocker Hotel v. Illinois Workers' Compensation Comm'n*, 2017 IL App (1st) 161027WC, noted that the proper venue to seek enforcement of a final award of the Commission is in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2014)).

¶ 24    In addition, the Commission declined to disturb the arbitrator's decision not to award claimant additional TTD benefits or penalties, observing that during the period claimant

allegedly did not work, he was employed by Countywide under the alias "Roberto Morales" and suffered a back injury in August 2014. The Commission concluded its analysis with the following remarks:

> "Not since the Petitioner in *Walker v. Illinois Medi-Car, Inc.*, \*\*\* 15 IWCC 629 *Aff'd* 2017 IL App (2d) 160368WC-U, has the Commission seen a more prolific liar. Nelson Centeno aka Roberto Morales under any *nom de plume* cannot be believed and has no credibility. His conduct in these matters cannot be countenanced."

¶ 25 On judicial review, the circuit court of Kane County confirmed the decision of the Commission. This appeal by claimant ensued.

¶ 26                                          II. ANALYSIS

¶ 27 On appeal, claimant raises the following issues. First, he claims that the Commission's decision is "null and void" because once he moved to withdraw his section 19(b) petition, the Commission did not have the power to proceed to hearing and render a decision. Second, claimant argues that the Commission's decision is "null and void" because it exceeded its power by "expanding the record on review to include trial transcripts and evidence from another case to support its decision." Third, claimant argues that the Commission's decision is "null and void" because it exceeded its power by "decid[ing] issues that the parties explicitly excluded from the hearing by \*\*\* stipulation." Fourth, claimant argues that the Commission violated the law-of-the-case doctrine by "erroneously conclud[ing] that it was without authority \*\*\* to award him the previously awarded medical bills, TTD and prospective medical." Fifth, claimant challenges the Commission's denial of attorney fees and penalties for respondent's failure to pay the uncontested portion of benefits awarded at the first section 19(b) hearing. Finally, claimant argues that the Commission erred in denying his request for medical expenses and TTD benefits relative to his back condition subsequent to the first section 19(b) hearing. We address each contention in turn.

¶ 28                                    A. Motion to Withdraw

¶ 29 Claimant first argues that the Commission decision is "null and void" because once he "withdrew" his section 19(b) petition, the Commission did not have the power to proceed to a hearing and render a decision. We find this issue forfeited because, although claimant filed a petition for review of the arbitrator's decision with the Commission indicating that he took exception to the Commission's "jurisdiction," he omitted any discussion of this issue in the statement of exceptions and supporting brief he subsequently submitted to the Commission. See *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 414 (2005) ("Arguments not raised before the Commission are waived on appeal."); *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 832 (2002) (same). Claimant nevertheless insists that this issue is one of subject matter jurisdiction that cannot be waived. See *Eschbaugh v. Industrial Comm'n*, 286 Ill. App. 3d 963, 967-68 (1996). Forfeiture aside, however, we find no merit to claimant's argument.

¶ 30 Referring to section 7020.80 of the rules governing practice before the Commission (50 Ill. Adm. Code 7020.80 (2014)), claimant asserts:

> "[T]he Commission had no power to force [him] to seek relief under Section 19(b) nor to force him to pursue such a petition after he wishes to abandon it, because [section 7020.80] prescribes a procedure that only [claimant] can perform and one that requires

he use a special form, served in a special manner and that contains certain information. 50 Ill. Admin. Code [*sic*]. Once [claimant] withdrew that which is required by Rule 7020.80, no relief under section 19(b) is allowed by the Commissions [*sic*] own rule."

Initially, we note that section 7020.80 no longer exists. It was recodified as section 9020.80 effective June 29, 2015. 39 Ill. Reg. 9603 (eff. June 29, 2015). Like its predecessor, however, section 9020.80 governs petitions for immediate hearings. 50 Ill. Adm. Code 9020.80 (2016). Relevant here, the rule sets forth the information that must be included in a petition for immediate hearing under section 19(b), the time allowed for filing a response to the petition, and the circumstances under which the case may proceed to a formal hearing. 50 Ill. Adm. Code 9020.80(a) (2016). We read nothing in the rule pertaining to a request to *withdraw* a section 19(b) petition for immediate hearing.

¶ 31    Claimant also directs us to two cases in support of his position: *Thomas*, 78 Ill. 2d 327, and *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC. In *Thomas*, the supreme court held that the arbitrator (whose decision was subsequently affirmed by the Commission) erred in entering a finding on permanent disability where the relief requested in the employee's petition for immediate hearing was limited to the issue of temporary total compensation. *Thomas*, 78 Ill. 2d at 333-34. The court concluded that because the issue of permanent disability was not presented to the arbitrator, "the finding on this issue is *** null and void." *Thomas*, 78 Ill. 2d at 334. In *Millennium Knickerbocker Hotel*, this court held that the Commission erred in granting the employee attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2012)) and penalties under section 19(k) of the Act (820 ILCS 305/19(k) (West 2012)) where the employee's attorney, at the outset of the proceeding, informed the commissioner hearing his "Motion to Enforce Contract and Penalties" that " '[t]here are no penalties asked for.' " *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 30. These cases in no way support the notion that a party has an absolute right to withdraw a section 19(b) petition after a hearing on the petition had begun and testimony had been elicited.

¶ 32    Although not cited by either party, we note that section 9020.60(c)(1) of the rules governing practice before the Commission provides that "[a]ny party may voluntarily dismiss his or her claim or any Petition or motion filed on his or her behalf upon motion signed by the party, if unrepresented, or his or her attorney of record." 50 Ill. Adm. Code 9020.60(c)(1) (2016). This provision, however, appears in the part of the Commission's rules entitled "Pre-Arbitration." As noted, the motion to withdraw in this case was filed *after* the section 19(b) hearing had already begun and claimant's testimony had been presented. Accordingly, we conclude that section 9020.60(c)(1) is not applicable to this case.

¶ 33    In *Brewerton Coal Co. v. Industrial Comm'n*, 324 Ill. 89 (1926), the supreme court dealt with an issue similar to the one presented here. In that case, the arbitrator awarded the employee benefits for injuries he sustained while at work. The employer filed a petition for review of the arbitrator's decision, and the Commission scheduled a hearing on the petition for February 19, 1925. A month prior to the hearing date, the employer filed a written motion to dismiss its petition for review. On February 19, 1925, before any other proceedings were had, the employer renewed its motion to dismiss its petition for review. Upon the hearing of the motion, the parties stipulated that the employee did not file a petition for review of the arbitrator's decision before the Commission and that his failure to seek review was not influenced by the employer's decision to file a petition for review. The Commission denied the employer's motion, proceeded to a hearing (without the employer's participation), and entered an award

substantially greater than the benefits awarded by the arbitrator. The circuit court confirmed the decision of the Commission, and the employer sought leave to appeal from the supreme court. As framed by the supreme court, the issue presented on appeal was whether the employer

> "had a legal right to dismiss its petition for review upon the filing of the written motion to dismiss prior to the hearing on review, and upon the renewal of the motion at the hearing before any other proceedings were had, where it appeared that its action in filing its petition for review did not in any way prejudice or influence [the employee], or cause him to not file a petition for review." *Brewerton*, 324 Ill. at 90.

Under these circumstances, the supreme court held that the employer "had a right to dismiss the petition without the consent of the opposite party." *Brewerton*, 324 Ill. at 92.

¶ 34    *Brewerton* teaches that a party in a proceeding under the Act has the right to dismiss a petition, motion, or claim without the consent of the opposing party *provided* that the request to dismiss is made prior to the commencement of the underlying hearing and it does not prejudice the opposing party. The issue in this case is different as the motion to withdraw was filed *after* the section 19(b) hearing had already begun and testimony had been presented. Under these circumstances, respondent suggests that we apply section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2016)), which governs the voluntary dismissal of a civil action. Section 2-1009(a) of the Code provides that "[t]he plaintiff may, at any time before trial or hearing begins, *** dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 ILCS 5/2-1009(a) (West 2016). After a trial or hearing has begun, a plaintiff may move for a voluntary dismissal under section 2-1009 only if the trial court so allows. 735 ILCS 5/2-1009(c) (West 2016); *Kilpatrick v. First Church of the Nazarene*, 177 Ill. App. 3d 83, 86-87 (1988) (noting that once a trial or hearing has begun, the right to dismissal is curtailed to prevent a plaintiff from dismissing a case if the trial proceedings appear unfavorable). The Code applies to workers' compensation proceedings to the extent that the Act or Commission rules do not regulate a topic. *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 154 (2000). As noted above, claimant has not cited, and our research has not found, any provision of the Act or the Commission rules that govern voluntary dismissals after an arbitration hearing has commenced. The standard of review applicable in assessing a motion to voluntarily dismiss an action after a trial or hearing has begun is whether the trial court abused its discretion. *Juen v. Juen*, 12 Ill. App. 3d 284, 287 (1973). An abuse of discretion occurs when the Commission's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the Commission. *Oliver v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 143836WC, ¶ 50.

¶ 35    In this case, claimant filed a petition for immediate hearing pursuant to section 19(b) of the Act. A hearing on the petition commenced on December 21, 2015. Claimant was called to testify at the hearing. On direct examination, claimant recounted the status of his condition and his alleged inability to work. On cross-examination, respondent's attorney elicited testimony from claimant suggesting that he had been working under two separate identities. Thereafter, claimant's attorney moved to bifurcate the proceeding due to a "breakdown" in the attorney-client relationship that made him question whether he could ethically remain as claimant's counsel. The arbitrator granted the motion. When the hearing resumed a month later, claimant's attorney announced that he would continue to represent claimant but moved to withdraw claimant's section 19(b) petition. Respondent opposed the motion. The arbitrator

denied the motion to withdraw, noting that the sole purpose of the bifurcation was to allow claimant's attorney to resolve ethical issues and that a withdrawal would prejudice respondent. Given this record, we find no abuse of discretion in the arbitrator's decision to deny claimant's motion to withdraw his section 19(b) petition (and the Commission's tacit approval of that ruling) because the motion was clearly filed after the arbitration hearing had commenced and respondent would be prejudiced since testimony unfavorable to claimant's position had been elicited. Accordingly, we reject claimant's argument that the Commission's decision is "null and void" and that he had the absolute right to withdraw his section 19(b) petition after the arbitration hearing had commenced and testimony unfavorable to him had been elicited.

¶ 36                                     B. Additional Evidence

¶ 37    Next, claimant argues that the Commission's decision is "null and void" because it exceeded its power by *sua sponte* "expanding the record on review to include trial transcripts and evidence from another case to support its decision." Specifically, claimant argues that the Commission was without authority to consider the transcripts and evidence in the *Morales* case. We find no merit to claimant's argument.

¶ 38    In support of his position, claimant directs us to section 9040.40(a) of the rules governing practice before the Commission (50 Ill. Adm. Code 9040.40(a) (2016)) and *Porvaznik v. Illinois Workers' Compensation Comm'n*, 2011 IL App (1st) 103850WC-U. We fail to see the relevance of section 9040.40(a) to claimant's argument, as it prohibits *the parties* (not the Commission) from introducing additional evidence on review unless it relates to procedural issues relevant to the review process. 50 Ill. Adm. Code 9040.40(a) (2016); see also 820 ILCS 305/19(e) (West 2016) (providing that in all cases in which a hearing before the arbitrator is held after December 18, 1989, no additional evidence shall be introduced by the parties before the Commission on review). Moreover, to the extent that *Porvaznik* is relevant, we decline to consider it as it is an unpublished order filed pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Apr. 1, 2018) and may not be cited as precedent except in limited circumstances, none of which are applicable here. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 17.

¶ 39    Claimant also argues that any action taken by the Commission that is not specifically authorized by statute is beyond the scope of the agency's jurisdiction. See *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 525 (2006). Claimant asserts that there is no authority for the Commission to *sua sponte* "expand" the record to consider the transcripts and evidence presented in another case. Here, however, we find that the Commission properly took judicial notice of the *Morales* case. See *City of Rockford v. Industrial Comm'n*, 69 Ill. 2d 597, 604 (1978) (allowing Commission to take judicial notice of municipal ordinances); *Setzekorn v. Industrial Comm'n*, 353 Ill. App. 3d 1049, 1054 (2004) (noting that the Commission tacitly took judicial notice of the Federal Register). Illinois courts recognize that documents containing readily verifiable facts from sources of indisputable accuracy may be judicially noticed if doing so will aid in the efficient disposition of a case. *City of Centralia v. Garland*, 2019 IL App (5th) 180439, ¶ 10; *Travelers Insurance v. Precision Cabinets, Inc.*, 2012 IL App (2d) 110258WC, ¶ 36. Public documents that are included in the records of courts and administrative tribunals are subject to judicial notice. *People v. Davis*, 65 Ill. 2d 157, 164 (1976); *Curtis v. Lofy*, 394 Ill. App. 3d 170, 172 (2009); *NBD Highland Park Bank, N.A. v. Wien*, 251 Ill. App. 3d 512, 520 (1993); see also *People v. Ernest*, 141 Ill. 2d 412, 428 (1990) (observing that trial court was authorized to take judicial notice of transcripts in underlying

action); *In re McDonald*, 144 Ill. App. 3d 1082, 1085 (1986) (recognizing that trial court has authority to take judicial notice of hearing transcripts). Here, the Commission attached to its decision on review the arbitrator's decision in the *Morales* case (No. 14 WC 29803) and considered the transcript from that case. This information was readily verifiable and aided in the efficient disposition of the case by providing "a full understanding of the dishonest nature of [claimant]," *i.e.*, that claimant admitted that he used the stolen identity of "Nelson Centeno." See *Filrep, S.A. v. Barry*, 88 Ill. App. 3d 935, 941 (1980) (holding that trial court could properly take judicial notice of facts in an earlier case indicating that the defendant had committed perjury as such facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy). Thus, we find no error in the Commission attaching to its decision the arbitrator's decision and considering the transcript from the *Morales* case. We also point out that respondent proffered evidence of the *Morales* case at the second section 19(b) hearing. As such, we fail to see how any alleged error by the Commission resulted in prejudice to claimant.

¶ 40                                                    C. Stipulation

¶ 41      Third, claimant argues that the Commission's decision is "null and void" because it exceeded its power by "decid[ing] issues that the parties explicitly excluded from the hearing by *** stipulation." Specifically, claimant asserts that, at the arbitration hearing, respondent stipulated that it was contesting liability for medical care and TTD based only on causal connection. Yet, claimant contends, the Commission "violated" this stipulation and decided this case on a different basis, *i.e.*, that claimant had reached maximum medical improvement from his work-related injury and was capable of working. Claimant misconstrues the Commission's decision.

¶ 42      In denying claimant benefits, the arbitrator found that claimant failed to sustain his burden of proving causal connection between his October 2010 work injury and his condition of ill-being subsequent to the first section 19(b) hearing on September 7, 2012, based on "the significant gap in treatment between 2011 and 2014." Accordingly, the arbitrator denied claimant any TTD benefits and medical expenses subsequent to the date of the first section 19(b) hearing. The Commission affirmed and adopted the decision of the arbitrator in its entirety. This record establishes that, contrary to claimant's contention, the Commission *did* decide the case on causal connection. And while the arbitrator did remark in finding no further period of temporary total disability that "substantial evidence was presented which places great doubt on [claimant's] claimed inability to work during his currently claimed period of TTD commencing 9/7/12 through the present," this was merely a comment on claimant's credibility.

¶ 43      Claimant argues that he would have put on evidence of his inability to work and his need for further medical care but for the stipulation that such matters would not be used as a basis to determine his right to benefits. However, claimant does not indicate the nature of this additional evidence. More significantly, claimant *did* present evidence at the second section 19(b) hearing regarding his alleged inability to work and his need for further medical care. Claimant himself testified that he was unable to work. Further, the medical records of Dr. McNally, which indicated that claimant was medically unable to work, were admitted into evidence. As discussed more thoroughly below, however, the Commission, as the trier of fact, was not required to accept this evidence, especially given the evidence presented at the second 19(b) hearing that placed claimant's credibility in doubt. See *Hosteny v. Illinois Workers'*

*Compensation Comm'n*, 397 Ill. App. 3d 665, 674 (2009) (noting that the Commission, as the trier of fact, is responsible for resolving conflicts in the evidence, assigning weight to the evidence, assessing the credibility of the witnesses, and drawing inferences from the record).

¶ 44     Respondent also directs us to *Thomas*, 78 Ill. 2d 327, in support of his position that the Commission went beyond its authority and decided the case on a basis not presented by the parties. However, *Thomas* is clearly distinguishable, as the arbitrator in that case decided an *issue* not raised by the parties. *Thomas*, 78 Ill. 2d at 333-34. Here, the issues of TTD benefits and medical expenses were squarely before the arbitrator and the Commission. And, as noted above, the Commission, in affirming and adopting the decision of the arbitrator to deny claimant's application for benefits, weighed all the evidence and determined that claimant failed to sustain his burden on liability and causal connection.

¶ 45                                  D. Prior Award

¶ 46     As his next assignment of error, claimant argues that the Commission violated the law-of-the-case doctrine by "erroneously conclud[ing] that it was without authority *** to award him the previously awarded medical bills, TTD and prospective medical." We disagree.

¶ 47     Claimant asserts that "[a]s an integral part" of his section 19(b) petition for immediate hearing, he requested that he be awarded the TTD benefits, medical expenses, and prospective medical care previously authorized at the first section 19(b) hearing. The Commission denied claimant's request. Citing this court's decision in *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, the Commission found that the proper venue to seek enforcement of a final award of the Commission is in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2016)). The Commission's finding in this regard did not constitute error.

¶ 48     As we noted in *Millennium Knickerbocker Hotel*, the Commission, as an administrative body created by legislative enactment for the purpose of administering the Act, lacks the inherent powers of a court and can only make such orders as are within the powers granted to it by the legislature. *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 18. The only method provided by the Act for enforcing a final award of the Commission is in the circuit court pursuant to section 19(g) (820 ILCS 305/19(g) (West 2016)). *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 18. Our decision in *Centeno I* was filed on June 21, 2016, and no further appeals were pursued. At that time, the Commission's award from the first section 19(b) hearing became final. Thus, when the Commission issued its decision in this case on December 15, 2017, it correctly determined that the award in *Centeno I* constituted a final award and that the only method to seek enforcement was in the circuit court pursuant to section 19(g) of the Act (820 ILCS 305/19(g) (West 2016)).

¶ 49     Despite the foregoing authority, claimant insists that the Commission "had the power to award the uncomplied with portions of the prior award *** and it was mandatory that it at least award those portions of the prior award, under the 'law of the case doctrine.' " Claimant contends that *Millennium Knickerbocker Hotel* is distinguishable because it did not involve "a petitioner presenting a 2nd section 19(b) petition." According to claimant, section 19(b) "specifically authorize[s] the Commission to award TTD under Section 8(b) [(820 ILCS 305/8(b) (West 2016))] and medical services under Section 8(a) [(820 ILCS 305/8(a) (West 2016))]," and the statute "does not differentiate between those already adjudicated under the law of the case doctrine and those requiring a new adjudication, so it empowers the Commission to address both." We disagree. As noted above, the Commission has only those

powers expressly granted to it by the legislature. *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 18. Claimant cites no language in section 19(b) specifically authorizing the Commission to enforce payment of its own award, and we are without authority to read into the plain language of a statute terms that the legislature did not intend (*O'Neil v. Illinois Workers' Compensation Comm'n*, 2020 IL App (2d) 190427WC, ¶ 25). Further, we find that the interpretation of section 19(b) advanced by claimant would be contrary to section 19(g) of the Act, which vests only the circuit court with the power to enforce a final award of the Commission. 820 ILCS 305/19(g) (West 2016); *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 21.

¶ 50    The cases cited by claimant in support of his position do not persuade us otherwise. Claimant cites multiple decisions from the Commission in support of his claim that the Commission has the authority to "award[ ] un-complied with portions of [a] prior award." However, the Commission decisions cited by claimant predate *Millennium Knickerbocker Hotel*. Moreover, decisions of the Commission in unrelated cases are not precedential authority in appeals before this court. *Noonan v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 152300WC, ¶ 28; *S&H Floor Covering, Inc. v. Illinois Workers' Compensation Comm'n*, 373 Ill. App. 3d 259, 266 (2007). Thus, we decline to consider these decisions.

¶ 51    Claimant also cites *Irizarry v. Industrial Comm'n*, 337 Ill. App. 3d 598 (2003). In that case, we determined that, pursuant to the law of the case doctrine, the Commission erred in finding that injuries to claimant's neck, right shoulder, and back were not causally related to his work injury where the Commission had reached the opposite conclusion at earlier section 19(b) hearings. *Irizarry*, 337 Ill. App. 3d at 605-07. We find nothing in *Irizarry* to support claimant's contention that section 19(b) grants the Commission the authority to enforce its own final award.

¶ 52    Accordingly, we hold that the Commission did not err in directing claimant to the circuit court, pursuant to section 19(g), to seek enforcement of any unpaid benefits awarded at the first section 19(b) hearing.

¶ 53                              E. Penalties and Attorney Fees

¶ 54    Claimant also argues that the Commission erred in denying his request for attorney fees and penalties under sections 16, 19(k), and 19(*l*) of the Act (see 820 ILCS 305/16, 19(k), (*l*) (West 2014)) for respondent's nonpayment of the uncontested portion of the medical bills, TTD benefits, and prospective medical care authorized by the Commission at the first section 19(b) hearing.

¶ 55    The intent of sections 16, 19(k), and 19(*l*) is to implement the Act's purpose to expedite the compensation of industrial workers and to penalize employers who unreasonably, or in bad faith, delay or withhold compensation due an employee. *Avon Products, Inc. v. Industrial Comm'n*, 82 Ill. 2d 297, 301 (1980). Awards under section 16 and 19(k) are proper only if the employer's delay in making payment is unreasonable or vexatious. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 504-05 (1998). That is, the refusal to pay must result from bad faith or improper purpose. *McMahan*, 183 Ill. 2d at 515. An award under section 19(*l*) is more in the nature of a late fee, so an award under that section is appropriate if an employer neglects to make payment without good and just cause. *McMahan*, 183 Ill. 2d at 515; *Dye v. Illinois Workers' Compensation Comm'n*, 2012 IL App (3d) 110907WC, ¶ 15. The employer has the burden of showing that it had a reasonable belief that the delay was justified. *Roodhouse*

*Envelope Co. v. Industrial Comm'n*, 276 Ill. App. 3d 576, 579 (1995). The Commission is authorized to assess penalties and attorney fees for nonpayment of a prior award. *Millennium Knickerbocker Hotel*, 2017 IL App (1st) 161027WC, ¶ 30; *Loyola University of Chicago v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 130984WC, ¶ 18; *Flynn v. Industrial Comm'n*, 94 Ill. App. 3d 844, 848-50 (1981). Whether to impose attorney fees and penalties is a question of fact subject to the manifest weight standard of review. *Residential Carpentry, Inc. v. Illinois Workers' Compensation Comm'n*, 389 Ill. App. 3d 975, 983 (2009). A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 539 (2007).

¶ 56       The record in this case establishes that at the beginning of the second section 19(b) hearing, the parties' attorneys and the arbitrator discussed the issues to be resolved. Claimant requested the imposition of attorney fees and penalties under sections 16, 19(k), and 19(*l*) for respondent's nonpayment of the uncontested portion of the medical bills and TTD benefits awarded at the first section 19(b) hearing. In this regard, the arbitrator noted that the "stipulation sheet" reflected that there were medical expenses "awarded and affirmed by the Commission and not appealed to the Appellate Court" in the amount of $66,781.33. Respondent acknowledged that these expenses remained unpaid. Claimant also requested the imposition of attorney fees and penalties for respondent's delay in payment of $17,389 in TTD benefits (which were paid in February 2015) and its alleged failure to pay an additional $1101.57 in TTD benefits.

¶ 57       In its decision, the arbitrator found that respondent's conduct with respect to the "delayed or failed payment of TTD ordered in the first 19(b) trial was neither so unreasonable or vexatious so as to justify the imposition of the requested penalties and fees." With regard to claimant's request for attorney fees and penalties relative to the award of medical expenses ordered by the Commission at the first section 19(b) hearing, the arbitrator concluded that claimant's request was "not ripe for determination until the resolution of the pending Appeal regarding the chiropractic bill awarded at the first 19(b) hearing and until such time as a total amount of medical expenses to be awarded [claimant] from the first 19(b) hearing can be determined." The Commission affirmed and adopted the arbitrator's decision.

¶ 58       As noted, claimant contends that he is entitled to attorney fees and penalties for respondent's failure to comply with the Commission's award of TTD benefits, medical expenses, and prospective medical care at the first arbitration hearing. At the outset, we observe that claimant did not raise before the arbitrator the issue of his entitlement to attorney fees and penalties based on respondent's failure to pay for the prospective medical care previously authorized by the Commission at the first section 19(b) hearing. Although claimant raised the issue in his statement of exceptions filed with the Commission, by failing to raise it before the arbitrator, he forfeited the issue. *Thomas*, 78 Ill. 2d at 336 (holding that issues not raised before the arbitrator are waived); *Kropp Forge Co. v. Industrial Comm'n*, 225 Ill. App. 3d 244, 252 (1992) (same). Moreover, although claimant did raise before the arbitrator the issue of his entitlement to attorney fees and penalties based on respondent's delay in paying $17,389 in TTD benefits, claimant does not address on appeal the Commission's finding (in affirming the arbitrator) that this delay was not so unreasonable or vexatious as to justify the imposition of attorney fees and penalties. Accordingly, we also determine that claimant has forfeited any claim with respect to the delay in payment of the TTD benefits. Ill. S. Ct. R. 341(h)(7) (eff.

May 25, 2018) (providing that points not argued in appellant's brief are forfeited); *O'Neil*, 2020 IL App (2d) 190427WC, ¶ 26.

¶ 59 However, we conclude that the Commission erred in failing to award penalties and attorney fees for respondent's failure to pay an additional $1101.57 in TTD benefits and its failure to pay the uncontested portion of medical bills. In this regard, we observe that claimant offered into evidence a letter from respondent's attorney, dated July 7, 2015, in which he acknowledged an underpayment of TTD benefits in the amount of $1101.57 and stated that he would "direct my client's [*sic*] to pay as we did not take a review of this lone Decision [*sic*]." Yet, without any explanation, the additional TTD had still not been paid when the second section 19(b) hearing began. Respondent's attorney also acknowledged in the July 7, 2015, letter that almost $67,000 in medical expenses were uncontested, but noted that claimant had sought judicial review of the Commission's decision to reduce the attorney fees from $97,243.01 to $66,781.33. As a result, respondent's attorney reasoned that respondent "owe[d] nothing until such time that the final order is rendered." Indeed, the arbitrator declined to award attorney fees and penalties on the unpaid medical expenses, finding that the issue was "not ripe for determination until the resolution of the pending Appeal regarding the chiropractic bill awarded at the first 19(b) hearing and until such time as a total amount of medical expenses to be awarded [claimant] from the first 19(b) hearing can be determined." The Commission affirmed and adopted the arbitrator's finding. However, as we noted in *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 39, an award of attorney fees and penalties may be proper where an employer withholds payment of an undisputed portion of the Commission's award. In this case, although claimant appealed the award of medical expenses, it was only to challenge the Commission's reduction in medical expenses by $30,461.68, based on the Commission's finding that only his initial six visits to the chiropractor were reasonable and necessary. See *Centeno I*, 2016 IL App (2d) 150575WC-U, ¶ 49. Neither party challenged in this court the propriety of the remaining medical expenses. Thus, at the time of the arbitrator's decision, the remaining $66,781.33 in medical expenses were undisputed.

¶ 60 As noted, awards under sections 16 and 19(k) are proper if the employer's delay in making payment is unreasonable or vexatious. An award under section 19(*l*) of the Act is proper when the employer's delay is without good and just cause, and penalties are mandatory. Given respondent's failure to pay the $1105.57 in TTD benefits and $66,781.33 in medical expenses, its acknowledgement that these portions of the awards were uncontested, and its failure to offer a valid excuse for nonpayment, we find that the Commission's decision not to award attorney fees and penalties was against the manifest weight of the evidence. We therefore reverse the Commission's denial of attorney fees and penalties under sections 16, 19(k), and 19(*l*) and remand the matter to the Commission for a determination of the amount of penalties and attorney fees to be assessed against respondent for its intentional delay in paying the uncontested portions of TTD benefits and medical expenses awarded at the first section 19(b) hearing.

¶ 61 F. Benefits Subsequent to First Section 19(b) Hearing

¶ 62 Finally, claimant maintains that the Commission erred in denying his request for medical expenses and TTD benefits relative to his back condition subsequent to the date of the first section 19(b) hearing. We disagree.

¶ 63    Causation presents a question of fact for the Commission to resolve. *ABF Freight System v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 141306WC, ¶ 19. Similarly, issues regarding an employee's entitlement to TTD benefits and medical care are factual inquiries for the Commission. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118-19 (1990) (TTD); *Dye*, 2012 IL App (3d) 110907WC, ¶ 10 (medical care). As the trier of fact, the Commission is responsible for resolving conflicts in the evidence, assigning weight to the evidence, assessing the credibility of the witnesses, and drawing inferences from the record. *Hosteny*, 397 Ill. App. 3d at 674. This is especially true with respect to medical issues, where we owe heightened deference to the Commission due to the expertise it has long been recognized to possess in the medical arena. *Long v. Industrial Comm'n*, 76 Ill. 2d 561, 566 (1979). The Commission's decision on a factual matter will not be set aside on review unless it is contrary to the manifest weight of the evidence. *Archer Daniels Midland Co.*, 138 Ill. 2d at 118-19. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Accolade v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120588WC, ¶ 17.

¶ 64    In this case, the arbitrator found that claimant failed to sustain his burden of showing a causal connection between his work-related injury in October 2010 and his condition of ill-being subsequent to September 7, 2012, the date of the first section 19(b) hearing. With respect to claimant's low-back injury, the arbitrator observed that prior to the first section 19(b) hearing, claimant last treated with Dr. McNally in December 2011. Subsequent to the first section 19(b) hearing, he did not seek any treatment until April 2014. The arbitrator found that this more-than-two-year gap in treatment was "detrimental" to claimant's claim of continued causal connection and his request for medical expenses subsequent to the first section 19(b) hearing. Based on her findings as to the gap in treatment, the arbitrator also found that claimant was temporarily totally disabled only through September 7, 2012. In finding no further period of TTD, the arbitrator further found that "substantial evidence was presented which places great doubt on [claimant's] claimed inability to work during his currently claimed period of TTD commencing 9/7/12 through the present." The Commission affirmed and adopted the decision of the arbitrator. In doing so, the Commission emphasized claimant's lack of credibility, citing evidence that claimant had been using two separate identities, was employed by Countywide during a period of time he was supposedly medically unable to work, and filed a claim for workers' compensation benefits against Countywide alleging an injury to his back in August 2014.

¶ 65    Claimant insists that neither his employment at Countywide, nor his new injury in August 2014, "diminishe[d]" the causal connection between his original work injury and the medical care subsequent to the first section 19(b) hearing or his inability to work through the date he was reemployed by Countywide. The Commission could have reasonably concluded otherwise. In this regard, we observe that at the second section 19(b) hearing, claimant denied sustaining any new accidents or injuries since the October 2010 work accident and testified that he had not worked since the first section 19(b) hearing. Yet respondent introduced evidence suggesting that claimant was using two separate identities, that claimant worked for Countywide subsequent to the first section 19(b) hearing, and that claimant filed an application for adjustment of claim against Countywide under the name "Roberto Morales" for an accident occurring in August 2014. This record clearly reflects negatively upon claimant's credibility and calls into question the truthfulness of the entirety of claimant's testimony. As noted above,

questions of credibility are particularly within the province of the Commission. *Hosteny*, 397 Ill. App. 3d at 674. Given the foregoing, we simply cannot say that the Commission's findings that claimant failed to meet his burden of proving entitlement to TTD benefits and medical expenses subsequent to the first section 19(b) hearing were against the manifest weight of the evidence. A conclusion opposite that of the Commission is not clearly apparent.

¶ 66     Claimant nevertheless faults respondent for (1) failing to call the foreman of Countywide "to identify Centeno, describe his work activities or speak first hand to the claimed new injury" or the doctors with whom claimant "may have treated" and (2) failing to introduce into evidence surveillance video or an independent medical examination from June 1, 2015, following the injury at Countywide. However, contrary to claimant's implication, it was not respondent's burden to prove that claimant was not entitled to additional TTD benefits or medical expenses following the first arbitration hearing. Rather, it was claimant's burden to prove *all* elements of his case. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980). Based on the evidence before it, the Commission reasonably concluded that claimant failed to meet his burden in this case.

¶ 67     Claimant also argues that the Commission's decision should be reversed based on the "unrebutted" medical records of Dr. McNally. Claimant notes that Dr. McNally's treatment plan remained unchanged following the first section 19(b) hearing, and he continued to opine that claimant was medically unable to work. Claimant also points out that Arbitrator Doherty acknowledged that Dr. McNally's opinion on the need for treatment did not substantially change between the first and second section 19(b) hearings. However, the record reflects, and claimant ignores, that Dr. McNally was not aware that he had worked for Countywide following the first section 19(b) hearing. Indeed, Dr. McNally's records reflect that claimant's last day of employment was October 7, 2010, the date of the injury claimant sustained while working for respondent. Moreover, Dr. McNally would have had no reason to know that claimant had resumed employment, as claimant indicated on the patient registration forms submitted to Dr. McNally's office that he was not employed. Accordingly, these arguments do not compel a conclusion that the Commission's findings that claimant was not entitled to additional TTD benefits or medical expenses subsequent to the first section 19(b) hearing were against the manifest weight of the evidence.

¶ 68                                    III. CONCLUSION
¶ 69     For the reasons set forth above, we reverse that portion of the judgment of the circuit court of Kane County confirming the decision of the Commission that denied claimant's request for section 16 attorney fees and section 19(k) and 19(*l*) penalties for respondent's failure to pay previously awarded and uncontested TTD benefits in the amount of $1101.57 and previously awarded and uncontested medical expenses in the amount of $66,781.33. The judgment of the circuit court is affirmed in all other respects. Further, this cause is remanded to the Commission for a calculation of attorney fees pursuant to section 16 and penalties pursuant to sections 19(k) and 19(*l*) and for further proceedings pursuant to *Thomas*, 78 Ill. 2d 327.

¶ 70     Affirmed in part and reversed in part.
¶ 71     Cause remanded.